[Civ. No. 8890.   Third Dist.   Apr. 1, 1957.]

EDGAR F. SMITH et al., Respondents, v. FRANK E. RICKARDS et al., Appellants.

Herbert P. Welch for Appellants.

Robnett & Wilson for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment in favor of plaintiffs, declaring the rescission of a sale to plaintiffs by defendants of a store building and stock in trade located in the village of Lake City in Modoc County. The judgment of rescission was based upon fraudulent misrepresentations inducing the sale.

The complaint alleged the following representations to have been made: That appellants were doing a good business with annual sales upward of $28,000 and with a net profit of 15 per cent of sales; that 50 per cent of the business was on credit, but that there was no loss arising therefrom; that the well at the rear of the store building, which constituted the only water supply, was a good well and that

it always supplied an abundance of water for household and domestic purposes and for irrigation of the lot; that a covered porch attached to the front of the store building was within the property lines; that a gasoline pump was within the property lines; that a ramp leading down under the store building and constituting the only entrance to the basement was within the property lines; that the sale which included the stock in trade would, as to the stock, be made upon a basis of cost plus 20 per cent; that certain additions to the building and a new roof all then in process of construction would be completed in good workmanlike manner; that the gas pump yielded a profit of $100 per month. The trial court found that all of the representations above recited were made; that they were false and untrue and were known to be so by the appellants; that they were made for the purpose of inducing the sale; that they were relied upon by respondents who were in ignorance of their falsity; that respondents would not have dealt otherwise. The trial court also found that, having completed the sale, respondents took possession of the store and did not become fully advised as to the misrepresentations made until about three months later, whereupon they promptly gave notice of rescission, offering to restore and reconvey to appellants all things of value which they had received, upon condition that appellants reimburse them for sums paid on the purchase price and sums laid out in reliance on respondents' statements. Appellants refused this offer to rescind and have since maintained steadily that respondents had no right to rescission.

We may say generally without detailing the evidence that an examination of the lengthy transcript discloses there was sustantial evidence to support the court's findings concerning the fraud by which appellants induced respondents to purchase the property and the stock in trade.

Appellants first contend that the notice of rescission was defective in that it did not offer specifically to allow the fair value of the use of the property during its occupancy by respondents. Concerning this matter of the right of appellants to receive the value of the use and occupation of the property, the trial court on substantial evidence found as follows: That the store premises are located in a small village with only a few inhabitants; that the patronage comes principally from surrounding ranches; that it has been the custom over the course of the years for the operators of the

store to keep the store open until late in the evenings, and upon holidays as well as business days because the patrons come in at all hours to obtain their supplies and such hours are necessary if the business is to succeed; that in view of the circumstances and the dependence of the business upon the patronage of the ranchers and in order to keep the store open as required, it was necessary for the operators to live on the premises; that the store building contains living quarters in the rear, and that from the time they took possession it had been necessary for respondents to live in said premises in order to operate the business just as appellants had done during the time they ran the store; that since giving the notice of rescission it has been necessary for respondents to continue these practices, all against their will, because of the fact that they considered themselves bound to return the store, the property and the business to the appellants upon the final determination of this litigation, rescission having been refused by appellants when offered to them; that the store building was fully occupied by the business save for the living quarters in the back, and that these could not be rented because necessarily occupied by respondents for the reasons above stated. ▇ While it has often been stated that a defrauded vendee electing to rescind may in the process of restoring the parties to the status quo be charged with the fair value of the use of the property during occupancy, nevertheless circumstances may be such that it would be inequitable to make such an award to the defrauding vendor. (See *Shermaster* v. *California Home Bldg. etc. Co.,* 40 Cal.App. 661, 669 [181 P. 409].) ▇ It is often impossible to make literal restoration to the status quo in declaring rescission, and the party entitled to rescind is not compelled in his offer to rescind to specify in detail what he proposes to do in the way of restoration. ▇ Here, respondents offered to convey and deliver to appellants all property and things of value which they had received by virtue of the fraudulent transaction and demanded that they be made whole on their part. Upon refusal of their offer, they remained in possession for the benefit of both parties, an action which the trial court found to have been necessary if the interests of all were to be preserved. Respondents then began this action, submitting themselves to equitable jurisdiction, asking that rescission be declared by decree of the court, and that the parties be returned to the condition they were in before the fraudulent transaction was consummated. We find

their notice of rescission to have been adequate; that they were justified in remaining in possession of the living quarters and therefrom conducting the business until the rights of the parties could be judicially determined; and that the trial court was justified in view of the circumstances in refusing to charge respondents with the rental value of the property.

Appellants next contend that the trial court's findings that portions of the premises were not within the lot lines but were within the public streets are not supported by the evidence. The deed from appellants to respondents described the property as Lot 1 in Block J of the town of Lake City in accordance with the official plat of Lake City and as being 80 feet north and south by 130 feet east and west. It was shown that this was the manner in which the property was marked on the county assessor's plats; that an ancient map made in 1896 and found in the county surveyor's office likewise described the property as Lot 1 in Block J of the town of Lake City. No plat of the subdivision of Lake City had ever been recorded in the recorder's office, but the county surveyor testified that pursuant to order of court he had made a survey in order to locate Lot 1 on the ground and to also locate the public ways upon which it was supposed to front, so as to determine whether or not the improvements were within the lot lines and were not upon the public ways; that he had prepared a map showing his survey (this map was received in evidence); that to determine the location of the property he had made a thorough search of the county records and of the files in his office; that he determined from a book on file and a map on file in the county surveyor's office the proportions and distances of that part of Lake City and then resorted to the original government land office survey of the section corner and the quarter corner to "bring in control of the property"; that from that control he did determine the boundaries of Lot 1 of Block J of Lake City and located it on the ground; that while the main building was located approximately along the north and the east lines of the lot, which was a corner lot, the ramp giving entrance to the basement, and the front porch upon which was the gasoline pump, all extended into the public street. The witness further stated that he had called to his aid in locating the property the evidence of cultural features, such as old fence lines and the like which indicated that the lot lines he had fixed by his survey were correct. He stated that he had tied his survey into the State

Plane coordinates, a method of determining the location of a point or series of points by line in relation to an over-all system. Without following the witness through the complexities of this method of locating a description on the surface of the earth, we quote his ultimate statement that by the use of the system, "it boils down to the condition that only one position can have the coordinate as stated." We think the court was fully justified in accepting the testimony of the surveyor that, as the result of what he had done, he had definitely located the boundaries of the property on the ground and determined therefrom that the front porch, the gasoline pump, and the ramp approach into the basement beneath the building, were all in the public streets. In this connection we deem it immaterial for the purposes of this action that no one was able to say whether or not the public rights of way consisted of easements or of the fee title. Either way, the representation that these improvements, so vital to the use of the store building, were all within the lot lines was, if false, fraudulent in a material way.

█ Appellants next attack the finding of misrepresentation as to the amount of business done in the sale of gasoline from the gas pump. Respondent Flora E. Smith testified that, during the negotiations, when appellants were asking that after the down payment required and agreed to, progress payments be made at the rate of $100 a month, she protested that such a sum was more than ought to be required; that "Mr. Rickards laughed and said the gas pump was taking in enough to more than make the payment of $100 a month." Appellants point out that by the sales tax reports, it was established that gross sales of gasoline had been averaging $148 per month, and that no representation was shown to have been made that it was the profits from the pump which would exceed $100 a month. Since the respondents would need profits as opposed to gross sales to make the payments required, the statement that the pump produced enough to make the contract payments of $100 a month supported the finding of the court that the representation was that it was the profit from the pump which would furnish the necessary funds. It was shown that the profits on the sales actually amounted to about $35 per month.

█ Appellants next contend that by virtue of certain provisions of the contract of purchase, respondents had disabled themselves from asserting fraud. The provisions were as follows: "Buyer has personally examined said property

and is familiar with its location and condition and is not relying upon any representation relating thereto." Such provisions have often been held insufficient to protect a fraudulent vendor from being held responsible for his fraud. (Civ. Code, § 1668; *Simmons* v. *Ratterree Land Co.,* 217 Cal. 201, 203-204 [17 P.2d 727].)

Appellants next contend that the decree was erroneous in that it included an award of interest from the date of notice of cancellation and rescission as to amounts of money paid to appellants by respondents in reliance, as the court found, upon the fraudulent representations made to them. The fundamental requisite in a case such as this is that the decree shall do equity. ▪ "In equitable actions, . . . , the rule of law as to interest is generally followed: 'but interest is sometimes allowed by courts of equity in the exercise of a sound discretion, when it would not be recoverable at law.'" (*McCowen* v. *Pew,* 18 Cal.App. 482, 485 [123 P. 354]; see, also, *Williams* v. *Graham,* 83 Cal.App.2d 649, 653 [189 P.2d 324].)

▪ "Interest may be awarded as an element of damages sustained by reason of fraud where the amount of the plaintiff's loss and the date from which interest, if awarded, should be computed are capable of definite ascertainment." (37 C.J.S. "Fraud," § 141(g), p. 469.) It is apparent from the record that the sums of money paid to appellants by respondents were definite as to time of payment and as to amount. The trial court so found. The findings were that respondents paid to appellants prior to notice of rescission specific sums on specific dates totaling $11,261.92, and the court allowed interest on that sum at the rate of 7 per cent from the time of notice of rescission served. It was also found that, by the refusal of appellants to accept rescission, respondents had been compelled to maintain the property, to hold the same in readiness to return and reconvey, and in so doing, expended other specific funds, aggregating $511.06. The court allowed interest on this aggregate from the service of notice of rescission. It is statutorily declared by Civil Code, section 1709, that one who wilfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers. We find no error in the allowance of interest made by the court.

The judgment appealed from is affirmed.

Peek, J., and McMurray, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.