[Civ. No. 9890. Third Dist. July 12, 1960.]

JOSEPH PESKIN, Respondent, v. FRANK E. PHINNEY, Appellant.

Griswold & Barrett and George C. Barrett for Appellant.

Wyman & Finell and Flaxman & Coleman for Respondent.

WARNE, J. pro tem.*—This is an appeal from a money judgment in favor of plaintiff in an action arising out of fraud and deceit.

Plaintiff, doing business as Aetna Factors Company, is engaged in factoring accounts receivable. On March 4, 1954, the plaintiff made a contract with M. E. Wright Lumber Company to "buy at net face amount of invoices all accounts receivable created by its sales" of lumber. Defendant was

---

*Assigned by Chairman of Judicial Council.

one of the customers of M. E. Wright Lumber Company and also an employee and creditor of the lumber company as well. Before making the contract with M. E. Wright Lumber Company plaintiff investigated it as to its financial ability and reputation and found the same satisfactory. Defendant was also, in turn, investigated by plaintiff as to his financial standing and reputation and found satisfactory, and a line of credit was approved for defendant. Thereafter, commencing on or about March 8, 1954, and continuing through April 13, 1954, the M. E. Wright Lumber Company caused to be prepared certain fictitious invoices purporting to represent the sale of lumber to defendant and took these invoices, together with delivery tickets and shipping tickets forged by M. E. Wright, to the office of plaintiff and received payment at the agreed price. The lumber company represented that its accounts receivable were based upon lumber sold and delivered to various customers, including the defendant, and that invoices supporting such accounts receivable represented actual lumber sold and delivered. The defendant knew of the above representations and conspired with M. E. Wright to defraud the plaintiff by acknowledging the validity of such invoices and representing to the plaintiff that such invoices represented lumber actually delivered.

Pursuant to the conspiracy between himself and the lumber company defendant paid some $64,000 worth of these fictitious accounts when the invoices were submitted to him by plaintiff. Furthermore, in response to a letter from plaintiff's auditors, defendant acknowledged in writing the validity of the aforesaid accounts receivable and underlying invoices and his indebtedness thereon. This course of dealing induced plaintiff to raise defendant's credit limit and to purchase still additional fictitious accounts receivable naming defendant as the customer who had supposedly purchased and received lumber. When defendant refused to make further payments of these accounts, plaintiff was left holding accounts and invoices with a total face value in the amount of $71,431.34.

Under his agreement with the lumber company plaintiff paid only 76 per cent of the face value of the invoices at the time they were delivered to him. Of the remaining 24 per cent 2 per cent represented plaintiff's profit on the transaction, 2 per cent was held by plaintiff as a reserve to provide for possible prompt payment discounts, and 20 per cent was held by plaintiff in a general reserve fund to cover the costs involved in any dispute which might arise over the quality and quantity of lumber delivered to any M. E.

Wright Lumber Company customer. This 20 per cent was returnable to the lumber company, if unused, on the 5th and 20th of each month. On the date on which the plaintiff and the lumber company last did business, April 13, 1954, there was some $50,000 to $55,000 in this general fund reserved by plaintiff to protect himself on the quality and quantity of lumber delivered by Wright Lumber Company. The fund had been entirely dissipated at the time of trial.

The trial court found that plaintiff was entitled to recover the full face value of the fictitious accounts receivable which he purchased from the M. E. Wright Lumber Company, and which defendant as the consignee refused to pay, i.e., $71,431.34. Appellant contends that the court erred in so computing the damages of respondent, in that the damages should have been limited to the amount which respondent actually paid to the lumber company upon delivery of the scheduled accounts and invoices, i.e., 76 per cent of their face value or $54,287.82. We feel that there is merit in this contention. The respondent in his amended complaint set up three separate causes of action, the first cause of action alleged fraud and deceit, the second alleged an open book account for goods sold and delivered, and the third incorporated all the allegations charging fraud and deceit as set forth in the first cause of action and alleged that by reason of the facts set forth therein appellant was estopped to deny liability on any of the invoices and accounts involved in this action. We feel, however, the alleged estoppel was an incident to and a part of the fraud which was practiced upon respondent by appellant and the lumber company.

Section 3343 of the Civil Code provides: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction.

"Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

Under this section of the code the "loss-of-the-bargain" rule is not the applicable measure of a recovery in a fraud case, and damages are limited to "out-of-pocket" loss. (*Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 760, et seq. [192 P.2d 935].)

Respondent seeks to avoid this statutory rule because the trial court's findings of fact in addition to setting

forth facts sufficient to justify a judgment on the cause of action for fraud also set forth the essential facts to create an estoppel upon the part of the appellant to deny the bona fides of the invoices.

Respondent's contention ignores the remedial limitations of the doctrine of estoppel. The doctrine acts defensively only. It operates to prevent one from taking an unfair advantage of another but not to give an unfair advantage of one seeking to invoke the doctrine. (*Varela* v. *Board of Police Commissioners*, 107 Cal.App.2d 816, 822 [238 P.2d 62]; *Little* v. *Union Oil Co.*, 73 Cal.App. 612, 621 [238 P. 1066].) Or as stated in 31 Corpus Juris Secundum, Estoppel, section 152, at page 440: "The doctrine of estoppel does not extend to matters affecting the remedy only, which are foreign to, and disconnected from, the contract or the character in which the parties entered into it; and when applied it should be only to the extent of protecting the party who has been misled against the loss actually occasioned thereby. . . ."

 Assuming estoppel was proved, the result nevertheless in this case would still bring the damages under the "out-of-pocket" rule as provided in section 3343 of the Civil Code.

 It is respondent's contention that even if his damages are assessed pursuant to section 3343 of the Civil Code he is still entitled to 98 per cent of the value of the accounts receivable which he purchased, i.e., the 76 per cent actually paid to Wright Lumber Company and the 22 per cent held in the two reserves. We cannot agree. Respondent did not receive the 22 per cent from appellant, nor did he pay such money to Wright Lumber Company.

 Appellant also contends that the trial court erred in failing to deduct the $50,000 to $55,000 held by respondent in the general fund to take care of any disputed Wright Lumber Company accounts. This contention is without merit. There is nothing in the record to show the Wright Lumber Company has any right whatever to recover these funds. Even if the lumber company had such a right, the appellant has failed to prove that he was subrogated to it, or any part of it.

Finally, appellant contends that the court's computation of interest was erroneous. To the extent that the judgment must be modified this contention is, of course, well taken. However, since the amount of respondent's loss and the date from which interest should be computed are capable of definite ascertainment, the court did not abuse its discretion in awarding interest. (Civ. Code, § 3288; *Smith* v. *Rickards*, 149 Cal.App.2d 648, 654 [308 P.2d 758].)

The judgment is reduced to the sum of $54,827.32 with interest thereon at the rate of 7 per cent per annum from the 14th day of May, 1954, and as modified the judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.