[Civ. No. 24452. Second Dist., Div. Two. Sept. 8, 1960.]

RUTH LOUGHAN et al., Appellants, v. HARGER-HALDE-
MAN (a Corporation) et al., Respondents.

Henry E. Kappler for Appellants.

Early, Maslach, Foran & Williams and Peter R. Krichman for Respondents.

FOX, P. J.—This was an action for damages for personal injuries brought by the plaintiff, Ruth Loughan and by her two minor children. Mrs. Loughan appeared as guardian *ad litem* on behalf of her children. (Plaintiffs will hereafter be referred to in the singular.) The action arose out of an alleged trespass upon property owned by Mrs. Loughan occurring during the course of an attempted repossession of Mrs. Loughan's Plymouth automobile. Defendant Harger-Haldeman is the assignee of a dissolved corporation, Greene-Haldeman, the original seller of the automobile. The defendant Accounts Collection Service, is a company engaged in the business of the collection of overdue accounts and the repossession of chattels. Defendant Ben Wasserman is the owner of Accounts Collection Service. The personal injuries for which recovery was sought were alleged to have resulted from fright caused by the trespassory act of an agent of Accounts Collection Service in an abortive attempt to repossess the Plymouth automobile.[1] After a trial by jury, verdict and judgment went for the defendants and the plaintiff has appealed.

---

[1]Several California cases have upheld the right of recovery of a plaintiff who has suffered physical injury as a result of fright occurring during a wrongful act. (*State Rubbish etc. Assn.* v. *Siliznoff*, 38 Cal.2d 330 [240 P.2d 282]; *Herzog* v. *Grosso*, 41 Cal.2d 219 [259 P.2d 429]; *Medeiros* v. *Coca-Cola Bottling Co.*, 57 Cal.App.2d 707 [155 P.2d 676].)

Plaintiff's first amended complaint alleges two causes of action. The first cause of action alleges physical injuries resulting from assault and trespass and the second alleges a conspiracy among the defendants to unlawfully and maliciously trespass upon the property of the plaintiff. As to the second cause of action, the trial court granted defendants' motion for non-suit at the close of plaintiff's evidence. Plaintiff appeals from the judgment, assigning as error several of the instructions given by the trial court and, in addition, the trial court's granting of the motion for non-suit.

The evidence discloses the following facts: In September, 1953, the plaintiff's husband, T. O. Loughan, purchased a new Plymouth automobile from Greene-Haldeman on a conditional sales contract. In September of 1955, a revision agreement was executed whereby the monthly payments were reduced. The provisions of this conditional sales agreement provide for repossession of the automobile from the buyer upon default of any of the conditions stated.[2] In March, 1956, the plain-

---

[2] The relevant portions of the conditional sales agreement are as follows: "Should purchaser fail or neglect to comply with any term or condition of this contract, or to make any payment provided for herein, when due or payable, or violate any of the provisions hereof, or should purchaser become financially involved, or if seller should feel insecure or deem the property in danger of misuse or confiscation, or in case of any unusual or unreasonable depreciation in the value thereof, or in case purchaser has made any misrepresentation as to his name, address or occupation, credit or reputation, seller at his option, and without notice to purchaser, may declare the whole amount unpaid hereunder immediately due and payable, or seller may, without notice to purchaser, declare all of purchaser's rights under this contract terminated, and without demand first made, and with or without legal process, immediately take possession of said property, together with all additions in equipment and accessories thereto, wherever the same may be found, using all the necessary force so to do, and hold the same, together with the title thereto, and purchaser waives all claims for damages due to or arising from or connected with any such taking. Should seller take possession of such property, all the rights of purchaser under this contract shall immediately terminate, and all payments heretofore made hereunder shall belong absolutely to seller, and purchaser shall pay to seller all installments then delinquent upon this contract; upon any such termination seller may, if he so desires, but shall not be obligated so to do sell said property at public or private sale, with or without notice to purchaser (if given, notice by mail to purchaser's address as given on this contract being sufficient) with or without having such property at the place of sale, and upon the terms and in such manner as seller, or his assignee may determine, and seller or his assignee may bid at any such sale. The net proceeds of any such sale shall be the remainder after deducting from the selling price all expenses for retaking and conditioning, keeping and selling such property, including the attorney fees aforesaid. In case the net proceeds of such sale added to the payments heretofore made hereunder do not cover the total payments required to be made by purchaser hereunder, then purchaser agrees to pay seller on

tiff's husband became ill and in August, 1956, he died. The last payment made by plaintiff prior to the events herein complained of was made on August 2, 1956. The next payment was due on August 30, three days after the death of plaintiff's husband. She failed to make this payment, but during September she had several discussions with Harger-Haldeman[3] personnel. Plaintiff testified that she was assured by these various employees that she should not be concerned and, further, that they felt that perhaps Mr. Loughan had insurance covering the balance of the payments in the event of his death and that she should wait until they had checked on this. At various times in the month of October she had further discussions with Harger-Haldeman personnel and the previous assurances were reiterated. During September she received a past due notice which had been sent to her husband's old office address but she received no other notice of any kind from the defendants. She made no further payments until November 8th.

Plaintiff and her two minor children lived in the family home situated high in the hills above San Fernando Valley in a remote and isolated section. During the early morning hours of November 8, 1956, plaintiff was awakened by a phone call from a man who identified himself as a repossessor of automobiles and who informed her that he was coming directly to her house to repossess her Plymouth car. The plaintiff immediately called the police, who responded to the call. She wrote out a check covering the delinquent payments, gave it to the policeman, who then posted it for her. Later in the morning, plaintiff called the offices of defendant Harger-Haldeman and talked to several people complaining about the early morning telephone call and demanding to know why the company was attempting to repossess her automobile when they had assured her that she need not be concerned about the payments. One of defendant's employees indicated that the repossessor had been sent by Harger-Haldeman. The evidence

demand such difference, with interest thereon from the date of sale at highest rate for which parties may lawfully contract in the state in which this contract is executed. Purchaser hereby waives all statute of limitations in any way affecting the time in which seller may enforce its rights hereunder and the defense thereof. Purchaser likewise waives any and all defenses that might be asserted against the rights herein given. Seller shall have the right to enforce one or more remedies hereunder successively or concurrently.''

[3]At this time Greene-Haldeman's contracts were being handled by Harger-Haldeman although there is no evidence that plaintiff was notified of an assignment.

shows that some time prior to November 8, Harger-Haldeman had ordered the repossession of plaintiff's automobile. Also on November 8, the plaintiff had a telephone conversation with Mr. Doughty, an officer of defendant Harger-Haldeman, who, after being assured that plaintiff had deposited a check in the mail covering the delinquent payments, stated to her that he would *cancel the repossession order*. There is some evidence that the repossession order was in fact cancelled but Wasserman did not corroborate this testimony; in fact Wasserman's employee Bernstein, who handled the transaction, testified that he did not receive a cancellation from Harger-Haldeman.[4]

The alleged trespass occurred at approximately 3:50 a.m. on November 9, 1956. The plaintiff was awakened by the barking of her dog. She testified that she arose from her bed and went to the window. She then saw two men on the edge of the grass, away from the driveway, in her back yard. The men were masked, or had stocking caps worn in such a manner that their faces were covered. One of the men was Bernstein, an employee of Accounts Collection Service, and the other was unidentified. She became extremly apprehensive and frightened, thinking that the men were there to burglarize her home or do her physical harm. She observed the men moving around the yard and at one point they were directly below her bedroom windows. It is evident from a surveyor's drawing of the house and lot that the plaintiff's bedroom area is far removed from the driveway where the plaintiff's two cars were located. Plaintiff's two children were also aware of the presence of the men and were badly frightened. Mrs. Loughan then went to the telephone and called the police. While she was engaged in this conversation she observed the men moving about the grounds and at one time heard a knock or noise. The police arrived shortly after 4 a.m., and immediately observed Bernstein (the employee of Accounts Collection Service) and another man who is to this day unidentified. Bernstein and his associate were released by the police after

---

[4]The repossession order admitted into evidence, including the signature of Harger-Haldeman, was in the handwriting of Bernstein, an employee of Accounts Collection Service. In relevant parts it read as follows:

"This is your authority to collect for us payment due from the above party [T. O. Loughan] . . . . In the event that this cannot be done easily, we hereby and by virtue of the terms of the conditional sales contract, declare the entire contract balance against the above property and party immediately due and payable . . . . In the event that you cannot collect either of the above, this order shall constitute your authority to take possession of and repossess said property for our account. By Harger-Haldeman."

the police had ascertained that they were acting pursuant to a repossession order. (See footnote 4.)

Plaintiff, feeling certain that the repossessors had been sent by Harger-Haldeman, immediately sent a telegram to that company requesting that Doughty call her as soon as possible at the opening of business in the morning. Some time during the morning plaintiff had a telephone conversation with Doughty and informed him that the men had been at her home and that she had called the police. Doughty stated to her that he was not sure whether the men had come in relation to the Plymouth automobile and that he would check. Doughty admitted that he had apologized to the plaintiff for the events of the preceding night. He also sent her a letter in which he stated: "I wish to sincerely apologize for the events of the past two nights. It will not happen again." On the 9th of November, plaintiff immediately deposited a check covering the remaining balance on the car.

■ We first consider plaintiff's argument that the trial court erred in instructing the jury on the sole issue raised by the defense; *i.e.*, that Accounts Collection Service was an independent contractor. In this connection the court instructed the jury that "one for whom an agent works is called the principal, and the principal is liable to third persons for the acts of an agent in the transaction of the business of the agency, if the agent himself is liable. But one who employs an independent contractor is not liable to others for the acts of the contractor. . . . If you find that at the time of the incident involved in this case the ACCOUNTS COLLECTION SERVICE, owned by BEN WASSERMAN, and employing defendant SHELDON GERALD BERNSTEIN, was an independent contractor, whatever your verdict may be as to the ACCOUNTS COLLECTION SERVICE, your verdict must be in favor of the defendants HARGER-HALDEMAN, a corporation on that issue." This instruction informed the jury without qualification that in no event would Harger-Haldeman be liable for the acts of Accounts Collection Service if the jury should find that the latter was acting as an independent contractor at the time of the attempted repossession. This is not an accurate statement of the law. ■ An independent contractor cannot with immunity be hired to perform an act which necessarily involves a trespass. In the case of *Yee Chuck* v. *Board of Trustees,* 179 Cal. App.2d 405 [3 Cal.Rptr. 825], a trespass was committed by one of the defendants through the instrumentality of an independent contractor. The court said: "Stanford, on the

other hand, cannot insulate itself from liability for the condition created on the land by its Contractor by claiming that the Contractor was an 'independent Contractor.' Stanford would not ordinarily be liable to third persons for negligence of the Contractor in doing the work, that is, for 'active conduct,' but that is not what is here involved. . . . Stanford is not shielded by the fact that the Contractor was an independent Contractor.'' (See also *Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256, 260 [143 P.2d 929] ; *Friedman* v. *Pacific Outdoor Adv. Co.*, 74 Cal.App.2d 946, 953 [170 P.2d 67].) It thus appears that the challenged instruction was clearly erroneous; that it was, furthermore, prejudicial will be demonstrated.

 Of paramount importance in the consideration of this instruction is the fact that the testimony of both Mrs. Loughan and Doughty clearly indicates, and without contradiction, that on the morning of the 8th of November, Doughty informed Mrs. Loughan that he was cancelling the repossession order. This statement, made on behalf of Harger-Haldeman by one of its executive officers, constituted a waiver of the prior defaults in the conditional sales contract as a matter of law.

The conditional sales contract specifically made time of the essence. It is clear that Mrs. Loughan was in default on three payments, specifically those due on August 30th, September 30th and October 30th. It is also clear that she had received some time during the month of September, a late notice which cured the waiver resulting from the prior course of action followed by Harger-Haldeman in allowing payments to be made later than the due date. Thereafter she was on notice that Harger-Haldeman would require strict compliance with the terms of the contract. Plaintiff having neglected to make the September and October payments, Harger-Haldeman declared the contract in default, exercised its right to declare a forfeiture and ordered repossession of the automobile. This forfeiture it then waived by its agent, Doughty. As said in *Talbot* v. *Gadia*, 123 Cal.App.2d 712 at 719 [267 P.2d 436] : ''The law looks with disfavor upon forfeitures, and evidence tending to show the waiver of a forfeiture will be favorably regarded, and the forfeiture will be avoided upon any reasonable showing. The amount of evidence required to establish a forfeiture is much greater than that required to establish a waiver, and the waiver may be implied from the acts and conduct of the parties.'' To constitute a waiver there must be an intentional relinquishment of a known right. Only an existing right may be waived. (*Craig* v. *White*, 187

Cal. 489, 498 [202 P. 645]; *Schultz* v. *Superior Court,* 143 Cal. App.2d 781, 782 [300 P.2d 275].) ▮ While waiver is ordinarily a question of fact (*Lyons* v. *Brunswick-Balke, etc. Co.,* 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173]; *Richfield Oil* v. *Security-First Nat. Bank,* 159 Cal.App.2d 184, 194 [323 P.2d 834]) it may be a question of law where but one inference can be drawn from the evidence (*Huttlinger* v. *Far West Enterprises, Inc.,* 131 Cal.App.2d 808, 811 [281 P.2d 554]; *Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804, 815 [165 P.2d 729]), and judgments depending upon the existence of the right so waived have been reversed upon appeal. (*Bassi* v. *Bassi,* 89 Cal.App.2d 886, 889 [202 P.2d 96]; *Jones* v. *Sunset Oil Co.,* 118 Cal.App.2d 668, 673 [258 P.2d 510]. See also *Chin Ott Wong* v. *Title Ins. & Trust Co.,* 89 Cal.App.2d 183 [200 P.2d 541].)

▮ To constitute a waiver the conduct of the obligee must be consistent only with a purpose on his part to treat the contract as subsisting and not terminated by the default of the other party. (*Hunt* v. *Mahoney,* 82 Cal.App.2d 540 [187 P.2d 43].) ▮ Doughty's act of voluntarily stating to the plaintiff that he would cancel the repossession order was an act inconsistent with the previously declared forfeiture. It was the manifestation of an intention not to enforce the only legal right remaining to Harger-Haldeman after the forfeiture had been declared; that is, to repossess the automobile and to sell it in order to recover the payments in default. There is no evidence of a contrary intention and the only inference to be gleaned from this statement is that Harger-Haldeman was intentionally relinquishing its forfeiture rights. The waiver is therefore established as a matter of law for there were no conflicts in the evidence and no explanation by Harger-Haldeman of this conduct. ▮ As said in *Neet* v. *Holmes,* 25 Cal.2d 447 at 459 [154 P.2d 854], quoting from *Brennan* v. *National Equitable Inv. Co.,* 247 N.Y. 486 [160 N.E. 190] : " ' Waiver is rarely established as a matter of law, but an intent contrary to apparent acts must be disclosed. . . .' "

It is too clear for argument that Harger-Haldeman had expressly and intentionally waived the default and the forfeiture. There was, therefore, no question to go to the jury on this issue. As a matter of law, the contract was not in default at the time of the attempted repossession. We, therefore, are faced with this situation: (1) If the jury believed that Accounts Collection Service was an agent of Harger-Haldeman, the acts of Bernstein were an outright trespass for which

Harger-Haldeman would be liable; or (2) if the jury believed that Accounts Collection Service was an independent contractor, Harger-Haldeman could still have incurred liability if the jury further found that the repossession order had not in fact been cancelled. On the question of cancellation of the repossession order there is a conflict in the testimony. Doughty testified that the repossession order had been cancelled, but Bernstein, who by his own testimony had taken the repossession order from Harger-Haldeman, and who had apparently handled the entire transaction for Accounts Collection Service, testified that he did not receive notice from Harger-Haldeman to cancel the repossession of the car. Mr. Wasserman did not corroborate Doughty's testimony and, in fact, testified that he knew nothing about the repossession order or the attempted repossession until subpoenaed as a witness. Furthermore, a logical inference which the jury could draw from the testimony was that no cancellation of the repossession order had been made by Harger-Haldeman from the fact that Bernstein had attempted to repossess the car the very next morning. Therefore, the jury could reasonably have found that Harger-Haldeman had failed to cancel the repossession order and that Accounts Collection Service and Bernstein were continuing to act pursuant to that order. Inasmuch as there had been a waiver of forfeiture, Harger-Haldeman's right to repossess the automobile had terminated and, absent a cancellation of the order, the entry upon plaintiff's premises was necessarily a trespass for which Harger-Haldeman would be liable even though Accounts Collection Service was found by the jury to be an independent contractor. The same reasoning, of course, applies if the jury found Accounts Collection Service to be an agent for in that instance Bernstein was simply acting within the scope of his employment and performing a trespassory act at the behest of his employer. In either instance, Harger-Haldeman is not divorced from liability and the challenged instruction obviously worked a great prejudice upon the plaintiff within the meaning of article VI, section 4½ of the California Constitution.

With respect to this same instruction the plaintiff also argues that the right to enter upon the premises of the buyer impliedly granted by the conditional sales contract is a personal privilege or license granted by the buyer to the seller or his assigns which may not be delegated to a third party who is not a privy to the contract. However, plaintiff is in no position to urge this latter contention for at plaintiff's request the

jury was instructed that "the purchaser agreed that the seller would have the right without notice to repossess the car wherever the same could be found, thus impliedly granting authority for the seller or *anyone designated by him* to enter upon the property of the purchaser. . . ." (Emphasis added.) Thus, it appears that by plaintiff's own interpretation of the contract the delegation of authority to Accounts Collection Service was a proper delegation even if Accounts Collection Service was an independent contractor. ▮ It is axiomatic that plaintiff may not complain of instructions given which were at her request or of error in the instructions given at her adversary's request where each are infected with the same vice. (*Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48 [186 P. 772].)

Although it appears that the judgment must be reversed for prejudicial error in the instruction previously discussed, one further contention of plaintiff merits consideration. Plaintiff argues that the jury was erroneously instructed at the request of the defendants that "by the terms of the contract of conditional sale of the automobile involved, the plaintiffs hereto who were the heirs of the purchaser *waived all claims for damages due to or arising from or connected with any such attempted repossession* if there was a default in any of the terms of the contract." (Emphasis added.) Plaintiff claims that this instruction is complete in itself and that it misstates the law. We have concluded that plaintiff is correct in this assertion. ▮ In *Ferguson* v. *Nakahara,* 43 Cal.App.2d 435 at 442 [110 P.2d 1091] the court said: "All instructions of the court are to be considered and construed as a whole to determine whether they contain reversible error. 'If a single instruction omits an essential element of the cause, but is a correct declaration of the law so far as it goes, and the omitted element is correctly given in another instruction, the omission will ordinarily be cured thereby. If, however, an essential principle of law is stated to the jury materially incorrect, this prejudicial error will not ordinarily be cured by a correct declaration of the same principle in another instruction. The giving of instructions which are contradictory in essential elements may warrant a reversal of a judgment for the reason that it is impossible to determine which charge controlled the determination of the jury.'" ▮ In this connection plaintiff urges that the foregoing instruction is erroneous in two respects: (1) That it requires only that there

be *a* default in some term of the contract in order to activate the contractual waiver of rights for damages arising from an attempted repossession; and (2) that the instruction incorrectly informed the jury that plaintiff had waived *all* rights for damages arising from or connected with any attempted repossession including injuries occasioned by fraudulent acts or wilful misconduct. We have previously made it clear that it was improper to instruct the jury with regard to the issue of default inasmuch as Harger-Haldeman had waived the default as a matter of law. This instruction is, of course, entirely improper for that reason. It should be noted, however, that the second objection raised by the plaintiff is well taken. This instruction does specifically foreclose plaintiff from any cause of action for damages arising from the attempted repossession whether or not the actions of the repossessor constituted wilful misconduct or fraud. It, in effect, directed a verdict for the defendants if the jury should find that the contract was in default, for on no hypothesis could the defendants be liable for any acts perpetrated in the attempt to repossess the automobile following a default. This is, of course, not the law for it is contra to the express provisions of section 1668 of the Civil Code. Obviously, one may not contract for exemption from the consequences of wilful misconduct. (See *Barkett* v. *Brucato,* 122 Cal.App.2d 264 [264 P.2d 978]; *Sproul* v. *Cuddy,* 131 Cal.App.2d 85 [280 Pd.2d 158]; *Butt* v. *Bertola,* 110 Cal.App.2d 128 [242 P.2d 32]; *Smith* v. *Rickards,* 149 Cal.App.2d 648 [308 P.2d 758]. Furthermore, it appears that this instruction was the only instruction specifically referring to plaintiff's contractual waiver of claims for damages arising from an attempt to repossess the automobile. It cannot be said to have been cured by other instructions for it is complete within itself and stands alone as the only statement of law on the subject. There can be no doubt that this instruction was prejudicial within the meaning of article VI, section 4½ of the California Constitution, for there is an abundance of evidence upon which the jury could have found that Bernstein and his associates committed acts of wilful and intentional misconduct.

 Finally, we make mention of plaintiff's argument that the trial court erred in granting defendants' motion for nonsuit on the alleged conspiracy cause of action. It would appear that the trial court properly granted defendants' motion in this connection, for a review of the evidence established by the plaintiff's case in chief reveals that no reason-

able inferences establishing the existence of a conspiracy could be drawn by the jury.

In view of our conclusion that the judgment must be reversed, it is unnecessary to here consider the further points of error urged by plaintiff.

The judgment is reversed.

Ashburn, J., and Richards, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.