[Civ. No. 24396. Second Dist., Div. One. Mar. 20, 1961.]

JOSEPH PESKIN, Plaintiff and Appellant, v. UNITED LUMBER COMPANY (a Partnership) et al., Defendants; ARCHIE M. HALLADAY, Defendant and Appellant.

Wyman, Finell & Rothman and James M. Dale for Plaintiff and Appellant.

Church & Howard and Charles F. Howard for Defendant and Appellant.

WOOD, P. J.—Action to recover money allegedly due on accounts receivable or, in the alternative, to recover damages for fraudulently inducing plaintiff to purchase the accounts. In a nonjury trial, judgment was for plaintiff for part of the amount claimed. Defendant appeals from the judgment; and contends that evidence was insufficient to support the findings as to liability, and that the court erred in not making findings on certain issues.

Plaintiff appeals from the portion of the judgment which awards plaintiff only $5,433.88; and he contends that the judgment should have included an additional amount of $2,708.55 (the amount of two additional invoices).

Plaintiff, Joseph Peskin, who was doing business as the Aetna Factors Company, was in the business of purchasing accounts receivable. On March 4, 1954, plaintiff and M. E. Wright Lumber Company (a partnership) entered into a contract whereby plaintiff agreed to "buy at the net face amount of invoices all accounts receivable created by its [Wright's] sales" of lumber. Defendant Archie M. Halladay, who was doing business as United Lumber Company (a partnership), was a customer of Wright Lumber Company. Halladay will be referred to as the defendant. Between March 5, 1954, and April 15, 1954, plaintiff purchased from Wright Lumber Company 13 accounts receivable which were evidenced by invoices which showed, or purported to show, sales of lumber to defendant. Defendant paid to plaintiff the amounts of the first 7 invoices. This action is to recover from defendant the amounts of the 6 other invoices. The alleged defense was that defendant did not receive the lumber referred to in those invoices. Plaintiff asserted (1) that defendant was estopped to deny the validity of the 6 invoices or (2) that defendant fraudulently induced plaintiff to purchase the 6 invoices.

The dates, number, and amounts of the 13 invoices referred to above were as follows:

| Invoice Date | Invoice No. | Face Amount of Invoice |
|---|---|---|
| 1954 | | |
| 3/5 | 7998 | 1409.00 |
| 3/5 | 7999 | 1268.48 |
| 3/15 | 8042 | 1278.13 |
| 3/22 | 8071 | 1340.53 |
| 3/26 | 8088 | 1355.45 |
| 3/26 | 8089 | 1346.87 |
| 3/26 | 8096 | 1373.00 |
| 3/26 | 8099 | 1480.29 |
| 4/6 | 8128 | 1357.59 |
| 4/6 | 8129 | 1353.11 |
| 4/9 | 8159 | 1376.31 |
| 4/12 | 8169 | 1357.20 |
| 4/12 | 8170 | 1351.35 |

Defendant received the lumber referred to in the first two invoices, but he did not receive the lumber referred to in the other invoices. On March 23, 1954, plaintiff's auditors sent a letter to defendant in which they asked him to verify his account with plaintiff as represented by the first 3 invoices. Defendant did not reply to the letter. Defendant's check (dated March 26, 1954) in payment of the first 2 invoices (7998 and 7999) was received by plaintiff on March 29, 1954. That check was payable to and endorsed by Wright Lumber Company. Defendant's check (dated March 26, 1954) in payment of the 3d and 4th invoices (8042 and 8071) was received by plaintiff on March 29, 1954; he paid the 5th invoice on April 7, 1954; and he paid the 7th and 8th invoices on April 15, 1954. Defendant paid the 5 invoices last referred to (invoices 8042, 8071, 8088, 8096, and 8099) although he had not received the lumber referred to in those invoices. Defendant testified that he paid the amounts of those invoices with funds he received from Wright through an exchange of checks with Wright. The matter of exchange of checks will be referred to later herein. On April 29, 1954, plaintiff sent a letter to defendant in which he demanded payment of his ''past due account'' in the amount of $5,433.88. (The amounts of invoices 8089, 8128, 8129, and 8159.) On May 6, 1954, attorneys for plaintiff forwarded a letter to defendant demanding payment of the same amount ($5,433.88), and in the letter they listed and referred to

invoices 8089, 8128, 8129, and 8159 only. On May 21, 1954, defendant forwarded a letter to plaintiff's attorneys in which he stated that he had not received the lumber referred to in invoices 8089, 8128, 8129, and 8159, and in the letter he requested that plaintiff, as assignee, issue credit memoranda for these invoices. The present action was commenced on August 25, 1954, and is based on those four invoices (8089, 8128, 8129, 8159), and on invoices 8169 and 8170 which were dated April 12, 1954.

It is not disputed that Wright presented to plaintiff, with the first 11 of the 13 invoices listed above, receipts, or purported receipts, for the lumber referred to therein, and freight bills, or purported freight bills, showing delivery of the lumber; that M. E. Wright forged the names appearing on the receipts for the lumber referred to in invoices 8042, 8071, 8088, 8089, 8096, 8099, 8128, 8129, and 8159 (all except the first two and the last two) and that M. E. Wright forged the names on the freight bills purporting to show delivery of the lumber referred to in those invoices; and that plaintiff mailed, and defendant received, the originals of all those invoices. With respect to invoices 8169 and 8170 (the last two) Albert Peskin, manager of plaintiff's business, testified that, when those invoices were presented to plaintiff, receipts and freight bills were attached thereto, and that the original invoices were mailed to defendant. Defendant testified that he did not receive those two invoices.

Prior to March 4, 1954 (the date of the contract between plaintiff and Wright), Wright sold to another factor (Gibson Factors) 17 accounts receivable represented by invoices which showed, or purported to show, sales of lumber to defendant. Defendant received the lumber referred to in 5 of those invoices; he did not receive the lumber referred to in the other 12 invoices. The first of the 12 invoices, referring to lumber which defendant did not receive, was dated December 29, 1953, and the last one was dated February 26, 1954. In each instance, Wright delivered to defendant a check for the amount of the invoice, and defendant forwarded his check to the factor for the same amount. A similar procedure was followed with respect to the payment by defendant to plaintiff of the amounts of invoices 8042, 8071, 8088, 8096, and 8099 (the 5 invoices Wright sold to plaintiff referring to lumber defendant did not receive). In each instance, Wright delivered to defendant a check for the amount of the invoice, and defendant forwarded his check to plaintiff for the same

amount. Defendant testified that the arrangement for exchanging checks was the result of his conversation with an independent salesman who sold lumber for Wright and through whom he (defendant) made all of his purchases from Wright. He testified further that the salesman assured him that the arrangement had been approved by an attorney, and by Gibson Factors, and by plaintiff.

The court found as follows: Plaintiff mailed to defendant the original and a copy of each of the 13 invoices on the date of purchase of each invoice or upon the following day. Defendant received all invoices except 8169 and 8170. Wright represented that the lumber described on each of the invoices had been delivered to defendant on the date appearing thereon and that defendant had actual knowledge of such representation. A course of business had arisen between Wright and defendant prior to the time plaintiff began to buy receivables. Wright was in need of money, and it was agreed between Wright and defendant that in instances where receivables were sold to Wright's factor (then Gibson) without any delivery of lumber, defendant and Wright would exchange checks when payment of the invoices became due. This agreement was made in order that defendant would not have to expend any money and yet Wright would have the use of the factor's money meantime, and thereby Wright acquired a fictitious credit and appearance of working capital which he did not possess. This method of handling fictitious invoices was pursued after plaintiff became factor of Wright's accounts receivable. Upon receipt of invoices 8042, 8071, 8088, 8096, and 8099, which invoices did not represent deliveries of lumber to him, defendant did not notify plaintiff that lumber had not been delivered but remained silent. When the invoices became due, defendant paid the invoices with his check, after first receiving from Wright the money with which to pay the invoices. Defendant received and retained invoices 8089, 8128, 8129, and 8159 (4 of the 6 invoices on which the action was based) knowing those invoices were not bona fide, and defendant did not notify plaintiff that the invoices were not bona fide. Plaintiff, when purchasing invoices 8089, 8128, 8129, 8159, 8169, and 8170 (the 6 invoices on which the action was based), believed that those invoices represented bona fide sales of lumber by Wright to defendant. Plaintiff was caused to have such belief by virtue of the fact that defendant had previously accepted without complaint, and had paid for, invoices 8042, 8071, 8088, 8096, and 8099. Plaintiff would

not have purchased from Wright the 6 invoices on which the action was based if defendant had informed plaintiff that no lumber had been delivered to defendant in connection with those invoices. Plaintiff reasonably relied upon defendant's silence and upon the payment by defendant for invoices 8042, 8071, 8088, 8096, and 8099, in purchasing the purported accounts receivable represented by the 6 invoices on which the action is based.

Under the heading, Conclusions of Law, the following appear:

"1. That defendant, by fraud and conspiracy, caused plaintiff to purchase from M. E. Wright Lumber Company accounts receivable represented by invoices 8089, 8128, 8129, 8159, 8169, and 8170 [all 6 invoices on which the action is based].

"2. That defendant, by his conduct, is estopped from denying the validity or bona fides of invoices numbered 8089, 8128, 8129, 8159 [4 of the 6 invoices on which the action is based] and is estopped from denying the fact that said invoices represent actual and bona fide accounts receivable; that defendant is liable to plaintiff for the amounts due on said invoices.

"3. That plaintiff is entitled to judgment against defendant in the sum of $5,443.88 [the total amount of invoices 8089, 8128, 8129, and 8159], with interest from the 12th day of May, 1954, at the rate of 7% per annum, in the sum of $1,931.43."

The judgment was for plaintiff for $5,433.88 with interest thereon from May 12, 1954, in the amount of $1,931.43.

Defendant (Halladay) contends on appeal that the evidence was insufficient to support the findings (1) with respect to misrepresentation or concealment on the part of defendant, (2) with respect to defendant's intent, and (3) with respect to reliance by plaintiff on conduct of defendant.

Plaintiff (Peskin) contends on appeal to the effect that since the court concluded that defendant fraudulently caused plaintiff to purchase the 6 invoices (upon which the action is based), the judgment should have been for the total amount of the 6 invoices ($8,142.43) instead of $5,433.88 which is the total amount of the 4 invoices as to which the court concluded there was liability on the part of defendant by reason of estoppel.

As above shown, the court made evidentiary findings regarding the exchange of checks between Wright Lumber Company and defendant whereby Wright acquired a fictitious

credit under circumstances where Wright sold invoices to plaintiff when Wright had not delivered lumber to defendant, and where defendant did not notify plaintiff that the lumber had not been delivered. Also there were evidentiary findings to the effect that when plaintiff purchased the 6 invoices on which this action was based he was caused to believe that those invoices represented bona fide sales of lumber because defendant had previously paid for 5 other invoices (invoices for lumber not delivered); and that plaintiff relied upon defendant's silence with respect to payment of those 5 prior invoices and plaintiff would not have purchased the 6 invoices if defendant had informed him that no lumber had been delivered. Under the heading of "Conclusions of Law" there were findings of ultimate facts (1) that defendant, by fraud and conspiracy, caused plaintiff to purchase the 6 invoices on which the action was based; and (2) that defendant, by his conduct, is estopped to deny the validity of 4 of the 6 invoices, and that defendant is liable to plaintiff for those invoices. The judgment, as above shown, was for $5,433.38 which was an amount equal to the face amounts of the 4 invoices as to which the court found, under the heading of "Conclusions of Law," there was an estoppel. It seems that even though the court found that the defendant fraudulently caused plaintiff to purchase the 6 invoices, the judgment was not based on that finding, but was based on the finding of estoppel regarding 4 invoices. It is also to be noted that under the heading of "Findings of Fact" the court found in effect that the defendant by his conduct was estopped to deny the validity of the 6 invoices. It therefore seems that the findings regarding estoppel are inconsistent, that is, the finding under the heading of "Findings" is to the effect that defendant is estopped as to 6 invoices, and the finding under the heading of "Conclusions" is that defendant is estopped as to 4 invoices. In summary, it appears that the judgment is inconsistent with the finding as to fraud, and that the findings as to estoppel are inconsistent with each other.

 Furthermore, there was no finding as to the amount plaintiff was damaged by reason of fraud. In this connection it is to be noted that Albert Peskin, the manager for plaintiff, testified that plaintiff paid Wright Lumber Company approximately 76 per cent of the amounts of the invoices. In view of that testimony a question arises as to the rule for determining the amount of recovery. In the case of *Peskin* v.

*Phinney,* 182 Cal.App.2d 632 [6 Cal.Rptr. 389], the plaintiff (who is also the plaintiff in the present case) sought to recover from Phinney, the purported debtor, the amounts of fictitious invoices which plaintiff had purchased from the Wright Lumber Company. In that case the method of making payments (by exchanging checks) was similar to the method of making payments in the present case. (The method was also similar to the method in *Peskin* v. *Squires,* 156 Cal.App.2d 240 [319 P.2d 405].) In the *Peskin* v. *Phinney* case the recovery was sought on the basis of fraud and on the basis of estoppel. In modifying the judgment therein, which judgment was in favor of plaintiff for the face amount of the invoices, it was held that plaintiff was entitled to recover under the " 'out-of-pocket' rule as provided in section 3343 of the Civil Code." [P. 719.]

Furthermore, in connection with the amount of the judgment in the present case, a question arises as to the sufficiency of the evidence to support a finding that plaintiff was induced to purchase invoice 8089 (one of the invoices as to which the court found liability) by relying upon prior payments by defendant of fictitious invoices. Invoice 8089 was purchased by plaintiff on March 26, 1954. The first check which plaintiff received from defendant in payment of a fictitious invoice (check dated March 26 in payment of invoices 8042 and 8071) was received by plaintiff on March 29, 1954 (three days after March 26). Since plaintiff did not receive payment of the first fictitious invoices (8042 and 8071) until March 29, it appears that such payment could not have been an inducement for plaintiff's purchase of invoice 8089 on March 26.

As above indicated, there were inconsistent findings; the amount of the judgment cannot be reconciled with the findings as to fraud and estoppel; it seems that the rule for determining the amount of recovery, as stated in *Peskin* v. *Phinney, supra,* was not applied; and the evidence does not support the finding that plaintiff paid invoice 8089 in reliance upon defendant's prior payment of certain invoices.

The judgment is reversed. Appellant Halladay to recover his costs on appeal. Appellant Peskin to bear own costs.

Fourt, J., and Lillie, J., concurred.