[Civ. No. 28175. First Dist., Div. One. Sept. 29, 1971.]

CELESTE GOLDEN, Plaintiff and Appellant, v.
J. M. DUNGAN, Individually and as Trustee, etc., et al., Defendants and
Respondents.

[Civ. No. 28210. First Dist., Div. One. Sept. 29, 1971.]

PAUL T. GOLDEN, Plaintiff and Appellant, v.
J. M. DUNGAN, Individually and as Trustee, etc., et al., Defendants and
Respondents.

(Consolidated Appeals.)

## COUNSEL

Moreno, Branner & Carnazzo and William P. Carnazzo for Plaintiffs and Appellants.

Anixter & Aronson, Wyckoff, Parker, Boyle & Pope, Lee Pope and Henry Cohen for Defendants and Respondents.

## OPINION

**SIMS, J.**—Plaintiffs, husband and wife, have each appealed from adverse judgments in separate actions filed against common defendants.[1] The judgments followed the sustaining of demurrers, without leave to amend, to the husband's second amended complaint, which contained one cause of action for abuse of process and a second cause of action for intentional infliction of extreme emotional distress, and to the wife's first amended complaint for intentional infliction of extreme emotional distress. All three alleged causes of action are predicated upon the same circumstances. Plaintiff husband contends, severally, that the facts set forth in his complaint are sufficient to establish a cause of action for abuse of process, and both assert that the facts establish a cause of action for the intentional infliction of emotional distress.

It is concluded that the trial court properly determined that the husband had failed to establish a cause of action for abuse of process. The trial court believed that although the conduct alleged might be deemed "inconsiderate, deliberate and vexatious," it was not "extreme or outrageous" within established principles giving rise to a cause of action for emotional distress. On review it is determined that the facts as alleged, if established, would warrant submitting the issue of defendants' liability to a trier of fact, and that the trial court erred in sustaining the defendants' demurrers to the respective causes of action alleged by the plaintiffs.

The complaints each allege, "each of the defendants was the agent and employee of each of the remaining defendants, and in doing the things hereafter mentioned was acting within the scope of said agency and employment."[2] The charging allegations of the husband's second amended complaint are as follows: "On or about January 23, 1969, defendants and each of them caused to be issued out of the Superior Court of the State of California in and for the County of Monterey a Summons and Complaint for Damages and to Examine Corporate Records."

"On or about February 10, 1969, defendants knowingly, maliciously, and with intent to inflict extreme mental suffering and duress upon plaintiff and plaintiff's family, caused the agent of defendants and each of them to

---

[1]The court, upon sustaining the demurrers in each action, took no action on a pending motion for consolidation.

[2]The defendants, J. M. Dungan, individually and as trustee in bankruptcy, George Frates III, and Sam Foster appeared separately in the trial court, and filed their demurrers to the respective complaints which are involved. Counsel for Dungan and Foster have filed a joint brief in support of the judgments. Counsel for Frates withdrew, pursuant to order of the trial court, after plaintiffs' appeals were perfected. No brief has been filed on behalf of that defendant in either action.

go to the home of plaintiff at 12:00 o'clock midnight to serve the process set forth [above]. The agent of defendants and each of them, disregarding the fact that the lights in plaintiff's home were unlit and the home was darkened, and despite the fact that the agent of the defendants and each of the [sic] had never attempted service upon plaintiff nor had the defendants and each of them any reason to believe service of process could not be served at a reasonable time and manner, the agent of the defendants and each of them did then and there pound in a loud and boisterous manner upon the front door of plaintiff's home (in spite of the fact that plaintiff's home was equipped with a property-functioning [sic] doorbell) thereby awakening plaintiff, his family and the neighborhood. Thereafter, the said agent did serve process upon plaintiff."[3]

"As a proximate result of the intentional, outrageous and unreasonable conduct of the defendants and each of them, plaintiff became frightened, upset, nervous and humiliated, and suffered extreme and severe mental suffering and duress, and has been damaged thereby in the sum of $6,000.00.

"In doing the things herein alleged, the defendants and each of them acted maliciously and were guilty of wanton disregard of the rights and privacy of the plaintiff, and acted with an intent to harrass [sic] and annoy, and by reason thereof, plaintiff demands exemplary damages from the defendants and each of them in the sum of $50,000.00."

Similar allegations, including those found in the husband's first cause of action (see fn. 2 above), are found in the wife's first amended complaint. She alleged that the service of process was directed to and effected upon her husband. Nevertheless she further particularly alleged that each of the defendants acted "knowingly, maliciously and with intent to vex, harass, irritate, and with the specific intent to inflict mental duress and suffering upon" herself.

## I

When the deficiencies in a plaintiff's complaint have been raised on one or more occasions it is not an abuse of discretion to sustain a demurrer to a subsequent amended complaint without leave to amend. (*Ruinello* v. *Murray* (1951) 36 Cal.2d 687, 690 [227 P.2d 251]; *Archuleta* v. *Grand Lodge etc. of Machinists* (1968) 262 Cal.App.2d 202, 210 [68 Cal.Rptr. 694]; *Agnew* v. *Parks* (1959) 172 Cal.App.2d

---

[3]The foregoing allegations are found in paragraph II of the husband's second cause of action for emotional distress. The first cause of action for abuse of process is more detailed. Paragraph IV includes the intent "to vex, harrass [sic] and irritate" the plaintiff and his family.

756, 766 [343 P.2d 118]; *Hinman* v. *Wagnon* (1959) 172 Cal.App.2d 24, 29 [341 P.2d 749]; *Potter* v. *Richards* (1955) 132 Cal.App.2d 380, 385 [282 P.2d 113].) ■■ On the other hand, the following rule is well recognized, " 'On appeal from a judgment sustaining a demurrer to a complaint the allegations of the complaint must be regarded as true. . . . All that is necessary as against a general demurrer is to plead facts entitling the plaintiff to some relief.' " (*Lloyd* v. *California Pictures Corp.* (1955) 136 Cal.App.2d 638, 642 [289 P.2d 295]. See also *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216]; *McHugh* v. *Howard* (1958) 165 Cal.App.2d 169, 173 [331 P.2d 674]; *Hayden* v. *Collins* (1905) 1 Cal.App. 259, 261 [81 P. 1120]; and 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 844, p. 2449.)

## II

Actionable abuse of process is defined as follows in 3 Restatement of Torts (1938) section 682, page 464: "One who uses a legal process, whether criminal or civil, against another to accomplish a purpose for which it is not designed is liable to the other for the pecuniary loss caused thereby."

The compilers of the Restatement added the following "Comment": "a. The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section."

The principles set forth above were recognized and applied in this state in *Tranchina* v. *Arcinas* (1947) 78 Cal.App.2d 522 [178 P.2d 65]. Thereafter they have been consistently applied. (See *Templeton Feed & Grain* v. *Ralston Purina Co.* (1968) 69 Cal.2d 461, 465-467 [72 Cal. Rptr. 344, 446 P.2d 152]; *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 347-348 & fn. 6 [66 Cal.Rptr. 697, 438 P.2d 345]; *Spellens* v. *Spellens* (1957) 49 Cal.2d 210, 230-233 [317 P.2d 613]; and *Czap* v. *Credit Bureau of Santa Clara Valley* (1970) 7 Cal.App.3d 1, 5-6 [86 Cal.Rptr. 417]. *Cf. Meadows* v. *Bakersfield S. & L. Assn.* (1967) 250

Cal.App.2d 749, 752-755 [59 Cal.Rptr. 34]; *Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80, 94-95 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Coy* v. *Advance Automotive Sales Co.* (1964) 228 Cal.App.2d 313, 317-321 [39 Cal.Rptr. 476] [disapproved, *White Lighting Co.* v. *Wolfson, supra,* 68 Cal.2d 336, 350, fn. 8]; *Kyne* v. *Eustice* (1963) 215 Cal.App.2d 627, 631-634 [30 Cal.Rptr. 391]; *Muller* v. *Muller* (1962) 206 Cal.App.2d 731, 733 [23 Cal.Rptr. 900]; *Fairfield* v. *Hamilton* (1962) 206 Cal. App.2d 594, 603-604 [24 Cal.Rptr. 73]; *Tellefsen* v. *Key System Transit Lines* (1961) 198 Cal.App.2d 611, 613-617 [17 Cal.Rptr. 919]; and *Pimentel* v. *Houk* (1951) 101 Cal.App.2d 884, 886-889 [226 P.2d 739]. Note, also, Prosser, Torts (4th ed. 1971) § 121, pp. 856-858; and 1 Harper and James, The Law of Torts (1956) § 4.9, pp. 330-332.)

The allegations of the complaint in no way impugn the defendants' acts in filing an action and securing a summons. Plaintiff husband contends that the summons has been used "to accomplish a purpose for which it is not designed" because the defendants "knowingly, maliciously and with intent to vex, harrass [*sic*], irritate and more specifically with the intention of inflicting mental suffering and duress upon the plaintiff and the plaintiff's family" caused the process to be served on the plaintiff in the manner of which he complains. Analysis of the allegations of the first cause of action in his second amended complaint indicates that it is the manner of service, not the fact of service itself which is the gravamen of plaintiff's alleged cause of action.

An analysis of the precedents cited above reveals that generally it is only where process is used to obtain a collateral advantage that an action will lie, e.g., seizure of a second lender's collateral in the hands of a debtor in order to coerce the former to pay the debtor's original obligation (*Templeton Feed & Grain Co.* v. *Ralston Purina Co., supra,* 69 Cal.2d 461, 466); attaching property which has a value greatly in excess of the amount of a legitimate claim in order to restrain the debtor from asserting a cross-claim (*White Lighting Co.* v. *Wolfson, supra,* 68 Cal.2d 336, 347); seizure of property of a wife to coerce her into dropping claims against her husband (*Spellens* v. *Spellens, supra,* 49 Cal.2d 210, 230); garnishing exempt wages in order to force a debtor to apply his exempt property to the payment of the debt (*Czap* v. *Credit Bureau of Santa Clara Valley, supra,* 7 Cal.App.3d 1, 5-6); and procuring a judgment in unlawful detainer for the purpose of evicting the tenants solely for the purpose of occupancy by the landlord (as provided by government regulation and certificate) with the intent of letting the premises as prohibited by law (*Tranchina* v. *Arcinas, supra,* 78 Cal.App.2d 522, 526).

The defendants' satisfaction in the successful accomplishment of their

intended vexation, harassment and irritation of plaintiff and his family by the service of process is not the type of collateral advantage which is generally recognized as a purpose for which the process is not designed. In fact it more nearly falls within the following principle noted in *Pimentel* v. *Houk, supra,* ". . . process must be used for something more than a proper use with a bad motive; that if a party uses it for the immediate use for which it was intended, he is ordinarily not liable, notwithstanding a vicious or vindictive motive; that if he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of process." (101 Cal.App.2d at p. 887. See also *Coy* v. *Advance Automotive Sales Co., supra,* 228 Cal.App.2d 313, 319-320 [disapproved, *White Lighting Co.* v. *Wolfson, supra,* 68 Cal.2d 336, 350, fn. 8]; *Kyne* v. *Eustice, supra,* 215 Cal.App.2d 627, 633; *Muller* v. *Muller, supra,* 206 Cal.App.2d 731, 733; and *Tellefsen* v. *Key System Transit Lines, supra,* 198 Cal. App.2d 611, 613-614.) The evil motive did not render the service of process actionable. Attention must be directed to the manner of service. If it were authorized there would be no right of action in any event. If, because of the manner of service, an actionable wrong arose, it must be attributed to the acts or omissions attendant upon the attempted service, and it does not relate to the process itself. ▮ The court properly sustained the demurrer to the husband's first cause of action for abuse of process.

## III

The separate claims of the husband and wife for damages for the intentional infliction of severe emotional distress must be weighed by principles which have been restated in 1 Restatement Second of Torts (1965) section 46, pages 71-80. The section as last promulgated reads:

"Outrageous Conduct Causing Severe Emotional Distress

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

"(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if such distress results in bodily harm." (Pp. 71-72.)

Numerous decisions of this state have considered the rules of the

Restatement and related principles.[4] Both the plaintiffs and the defendants find support for their position in section 46 of the Restatement and the comments and illustrations which are appended in explanation.

In support of the judgment, defendants (see fn. 1 above) point out that there is no special relationship between the parties which has been abused,[5] and that there are no allegations that plaintiffs were or that either of them was particularly susceptible to emotional distress, or if so, that defendants or any of them had any knowledge of such a condition.[6] They

[4]See *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 497 [86 Cal.Rptr. 88, 468 P.2d 216]; *State Rubbish etc. Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 336-339 [240 P.2d 282]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App. 3d 376, 394 [89 Cal.Rptr. 78]; *Vargas* v. *Ruggiero* (1961) 197 Cal.App.2d 709, 717-718 [17 Cal.Rptr. 568]; *Loughan* v. *Harger-Haldeman* (1960) 184 Cal.App.2d 495, 497, footnote 1 [7 Cal.Rptr. 581]; *Tate* v. *Canonica* (1960) 180 Cal.App.2d 898, 904-906 [5 Cal.Rptr. 28]; *Richardson* v. *Pridmore* (1950) 97 Cal.App.2d 124, 130 [217 P. 2d 113, 17 A.L.R.2d 929]; *Bowden* v. *Spiegel, Inc.* (1950) 96 Cal.App.2d 793, 794-795 [216 P.2d 571]; and *Emden* v. *Vitz* (1948) 88 Cal.App.2d 313, 316-319 [198 P.2d 696]. *Cf. Czap* v. *Credit Bureau of Santa Clara Valley, supra,* 7 Cal.App.3d 1, 5; *Cornblith* v. *First Maintenance Supply Co.* (1968) 268 Cal.App.2d 564, 565 [74 Cal.Rptr. 216]; *Spackman* v. *Good* (1966) 245 Cal.App.2d 518, 528-530 [54 Cal. Rptr. 78]; *Grimes* v. *Carter* (1966) 241 Cal.App.2d 694, 699-700 [50 Cal.Rptr. 808, 19 A.L.R.3d 1310]; *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 808 [42 Cal. Rptr. 314]; *Perati* v. *Atkinson* (1963) 213 Cal.App.2d 472, 474 [28 Cal.Rptr. 898]; and *Espinosa* v. *Beverly Hospital* (1952) 114 Cal.App.2d 232, 235 [249 P.2d 843]. Note also, Prosser, Torts (4th ed. 1971) section 12, pages 49-62; 1 Harper and James, The Law of Torts (1956) sections 9.1-9.7, pages 665-691; Smith, *Problems of Proof in Psychic Injury Cases* (1963) 14 Syracuse L.Rev. 586, 590; Lambert, *Tort Liability for Psychic Injuries* (1961) 41 B. U. L.Rev. 584, 587-589; Hochman, *"Outrageous-ness" and Privilege in the Law of Emotional Distress* (1961) 47 Cornell L. Q. 61; Prosser, *Insult and Outrage* (1956) 44 Cal.L.Rev. 40; Smith, *Legal Liability for Psychic Stimuli* (1944) 30 Va.L.Rev. 193; Magruder, *Mental and Emotional Disturbance in the Law of Torts* (1936) 49 Harv.L.Rev. 1033; and Annot: Torts—Emotional Disturbances (1959) 64 A.L.R.2d 100, 119-126.

[5]Comment *e.* to section 46 provides, "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests. Thus an attempt to extort money by a threat of arrest may make the actor liable even where the arrest, or the threat alone, would not do so. In particular police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position. Even in such cases, however, the actor has not been held liable for mere insults, indignities, or annoyances that are not extreme or outrageous." (1 Rest.2d Torts at p. 74.) (See also, *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 498, fn. 2; and *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 403.)

[6]Comment *f.* to section 46 provides, "The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." (1 Rest.2d Torts at p. 75.) (See also, *Alcorn* v. *Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 498, fn. 3.)

assert that in the absence of such circumstances, the trial court properly applied the criteria set forth in comment *d.* which reads in part as follows: *"Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. . . ." (1 Rest.2d Torts at pp. 72-73. See also, *Czap* v. *Credit Bureau of Santa Clara Valley, supra,* 7 Cal.App.3d 1, 5; *Cornblith* v. *First Maintenance Supply Co.* (1968) 268 Cal.App.2d 564, 565 [74 Cal.Rptr. 216]; *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 808-809 [42 Cal.Rptr. 314]; and *Perati* v. *Atkinson* (1963) 213 Cal.App.2d 472, 474 [28 Cal.Rptr. 898].) Defendants contend that under no circumstances could unnecessarily pounding on the front door of a darkened house at midnight in a loud and boisterous manner, which awakened not only the occupants but also the neighborhood, be considered extreme and outrageous conduct or more than a mere indignity, annoyance, petty oppression, or other triviality.

On the other hand, plaintiffs point out that the conduct complained of was allegedly performed with the express intent to inflict extreme mental suffering and duress upon the plaintiffs.[7] Moreover, they do not accede to

---

[7]"Of course, these allegations may be difficult of proof, but for purposes of reviewing the court's ruling upon the demurrer they must be assumed to be true." (*Czap* v. *Credit Bureau of Santa Clara Valley, supra,* 7 Cal.App.3d 1, 6.) On the one hand, the proof of intent may not rise above an inference sought to be drawn from the circumstances related in the complaint; or, on the other hand, a disinterested witness might testify as to overhearing a conversation in a coffee shop in which the defendants requested the process server to conduct himself as alleged for the purpose of causing the severe emotional distress which allegedly resulted. Without passing on the propriety of the former inference, it is evident that in the latter situation the defendants

the proposition that the position of the defendants and their relationship to plaintiff husband is immaterial. (Cf. fn. 5 above, and accompanying text.) The loud and boisterous conduct of which complaint is made is not that of an innocent inebriate seeking directions, but, according to the allegations of the complaint, was the result of actions designed and intended by those claiming damages from the husband in a lawsuit, and the immediate actor was proceeding under color of process issued in that lawsuit.

The plaintiffs rely upon *Bowden* v. *Spiegel, Inc.* (1950) 96 Cal.App.2d 793, 794-795 [216 P.2d 571]. There it was alleged that an agent of the defendant store operator telephoned to the home of a neighbor of the plaintiff at about 11 p.m. and asked for the plaintiff. On being advised that it was an emergency, the neighbor summoned the plaintiff to the phone. The agent thereupon advised the plaintiff the message would be a shock to her. When he was advised that plaintiff could take the message, he requested and demanded that plaintiff pay a bill which did not in fact exist. The neighbor's family listened to plaintiff's end of the conversation. It was alleged that the agent acted maliciously and with the intent to harass and annoy plaintiff and with no probable cause; and that as a result plaintiff became sick and ill and would remain so for an indefinite time. (96 Cal. App.2d at pp. 793-794.)

The court concluded, "That the above facts, if true, spell out a cause of action we have no doubt" (*id.* see also *Vargas* v. *Ruggiero* (1961) 197 Cal.App.2d 709, 718-719 [17 Cal.Rptr. 568]; *Guillory* v. *Godfrey* (1955) 134 Cal.App.2d 628, 633 [286 P.2d 474]; *Richardson* v. *Pridmore* (1950) 97 Cal.App.2d 124, 130 [217 P.2d 113, 17 A.L.R.2d 929]; and *Emden* v. *Vitz* (1948) 88 Cal.App.2d 313, 319 [198 P.2d 696]). The decision states, "The important elements are that the act is intentional, that it is unreasonable, and that the actor should recognize it as likely to result in illness. Given these elements the modern cases recognize that mere words, oral or written, which result in physical injury to another are actionable." (96 Cal.App.2d at p. 795.) The plaintiffs contend that they have satisfied these criteria by alleging that the acts were intentional, by alleging facts which show that the service of process at the time and in the manner set forth was unreasonable, and that the defendants, in intending to inflict extreme mental suffering and duress on the plaintiffs were cognizant that such results, which it is alleged did in fact ensue, would be the result of their conduct.

In resolving these conflicting contentions it is important to note that in

should not be permitted to assert that it would be unreasonable to anticipate that the very results they intended did in fact ensue. (See *State Rubbish etc. Assn.* v. *Siliznoff, supra,* 38 Cal.2d 330, 336-337.)

his current edition of his treatise on torts, Professor Prosser observes, with respect to a cause of action for the infliction of mental duress, "In this respect, the law is clearly in a process of growth, the ultimate limits of which cannot as yet be determined." (Prosser, Torts (4th ed. 1971) p. 50. See also references collected *id.* fn. 27; 1 Rest.2d Torts, Caveat and com. *c.*, p. 72; 1 Harper and James, The Law of Torts, *supra,* § 9.1, pp. 667-668; and Annot: Torts—Emotional Disturbances, *supra,* 64 A.L.R.2d 100, 119-120.)

The history of the development of the law supports plaintiffs' position. In 1934, the Restatement of Torts took the position that generally there was no liability for emotional distress alone although it was intentionally caused, and no liability for physical harm unexpectedly resulting from a mental or emotional disturbance to another. (1 Rest., Torts (1934) § 46, p. 86.) The change in the law as reflected in the Restatement of Torts is chronicled in *State Rubbish etc. Assn.* v. *Siliznoff, supra,* as follows: "The view has been forcefully advocated that the law should protect emotional and mental tranquility as such against serious and intentional invasions [citations], and there is a growing body of case law supporting this position. [Citations.] In recognition of this development the American Law Institute amended section 46 of the Restatement of Torts in 1947 to provide:

" 'One who, without a privilege to do so, intentionally causes severe emotional distress to another is liable (a) for such emotional distress, and (b) for bodily harm resulting from it.' "

"In explanation it stated that 'The interest in freedom from severe emotional distress is regarded as of sufficient importance to require others to refrain from conduct intended to invade it. Such conduct is tortious. The injury suffered by the one whose interest is invaded is frequently far more serious to him than certain tortious invasions of the interest in bodily integrity and other legally protected interests. In the absence of a privilege, the actor's conduct has no social utility; indeed it is anti-social. No reason or policy requires such an actor to be protected from the liability which usually attaches to the wilful wrongdoer whose efforts are successful.' (Restatement of the Law, 1948 Supplement, Torts, § 46, comment *d.*)" (38 Cal.2d at p. 337. See also, *Tate* v. *Canonica, supra,* 180 Cal.App.2d 898, 905-906.)

In 1957 the reporter and his advisors proposed a change in the heading of section 46 from "Conduct Intended to Cause Emotional Distress Only" to "Outrageous Conduct Causing Severe Emotional Distress," as now found in section 46 of the second Restatement. (See *Agostini* v. *Strycula, supra,* 231 Cal.App.2d 804, 808-809; Rest. 2d Torts Tentative Draft No. 1

(1957) § 46, p. 22.) At the same time the text,[8] and the comments and illustrations were revised substantially as found in the second Restatement published in 1965. (*Id.* pp. 22-28.) In explanation, a note recites: "The rapid development of this 'new tort,' and the numerous cases in which it has appeared, even since the 1948 revision, have indicated the need for a more limited statement which will set some boundaries to the liability, falling short of the broad statement made in the section as it now stands. The comments have again been rewritten, retaining the general approach and much of the language of the 1948 revision, but indicating the results of the cases to date. The Caveat has been added in order not to hinder the further development of the liability, if it is to occur." (*Id.* p. 21.)

In evaluating the limitations placed on the broader statement of 1948, it is important to consider the policies which are believed to necessitate narrower boundaries for the field of liability. Originally there was a great reluctance to redress injuries which were not evidenced by an impact. The barriers have been broken down, however, and in *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 411 P.2d 912, 29 A.L.R.3d 1316], the majority of the court rejected the argument that recovery should be barred on a legitimate claim because fraudulent claims may be urged, and the contention that inability to fix guidelines for other cases made it necessary to reject an otherwise cognizable claim. (68 Cal.2d at pp. 735-748; and cf. *Amaya* v. *Home Ice, Fuel & Supply Co.* (1963) 59 Cal.2d 295, 310-315 [29 Cal.Rptr. 33, 379 P.2d 513].) It is significant that in each of the foregoing decisions, it was pointed out that the doctrine in question in this case, as found in *State Rubbish etc. Assn.* v. *Siliznoff, supra,* is predicated upon the *intentional* infliction of fright. (See 68 Cal.2d at p. 738, and 59 Cal.2d at p. 311. See also, *Spackman* v. *Good, supra,* 245 Cal.App.2d 518, 528-530; and *Tate* v. *Canonica, supra,* 180 Cal.App.2d 898, 909.)

In *State Rubbish etc. Assn.* v. *Siliznoff, supra,* the court stated, "It may be contended that to allow recovery in the absence of physical injury will open the door to unfounded claims and a flood of litigation, and that the requirement that there be physical injury is necessary to insure that serious mental suffering actually occurred. The jury is ordinarily in a better position, however, to determine whether outrageous conduct results in mental

---

[8]In the tentative draft section 46 read:

"(1) ONE WHO BY EXTREME AND OUTRAGEOUS CONDUCT INTENTIONALLY OR RECKLESSLY CAUSES SEVERE EMOTIONAL DISTRESS TO ANOTHER IS SUBJECT TO LIABILITY FOR SUCH EMOTIONAL DISTRESS AND FOR BODILY HARM RESULTING FROM IT.

"(2) WHERE SUCH CONDUCT IS DIRECTED AT A THIRD PERSON THE ACTOR IS SUBJECT TO LIABILITY IF HE INTENTIONALLY OR RECKLESSLY CAUSES SEVERE EMOTIONAL DISTRESS TO ANOTHER WHO IS PRESENT AT THE TIME." (*Id.* p. 22.)

distress than whether that distress in turn results in physical injury. From their own experience jurors are aware of the extent and character of the disagreeable emotions that may result from the defendant's conduct, but a difficult medical question is presented when it must be determined if emotional distress resulted in physical injury. (See Smith, *Relation of Emotions to Injury and Disease*, 30 Va.L.Rev. 193, 303-306.) Greater proof that mental suffering occurred is found in the defendant's conduct designed to bring it about than in physical injury that may or may not have resulted therefrom.

"That administrative difficulties do not justify the denial of relief for serious invasions of mental and emotional tranquillity is demonstrated by the cases recognizing the right of privacy. Recognition of that right protects mental tranquillity from invasion by unwarranted and undesired publicity. (*Melvin* v. *Reid*, 112 Cal.App. 285, 289 [297 P. 91]; Rest., Torts, § 867, comments *c* and *d*.) As in the case of the protection of mental tranquillity from other forms of invasion, difficult problems in determining the kind and extent of invasions that are sufficiently serious to be actionable are presented. Also the public interest in the free dissemination of news must be considered. Nevertheless courts have concluded that the problems presented are not so insuperable that they warrant the denial of relief altogether." (38 Cal.2d at pp. 338-339. See also, *Emden* v. *Vitz, supra*, 88 Cal.App.2d 313, 319.)

■ It is concluded that a cause of action for the intentional infliction of severe emotional distress to another should not be rejected because of the difficulty of proof, or of measuring the damages; nor because the courts will be flooded with frivolous or fraudulent claims. It is recognized however, "that where physical harm is lacking the courts will probably tend to look for more in the way of extreme outrage as an assurance that the mental disturbance claimed is not fictitious; . . ." (Prosser, *Insult and Outrage* (1956) 44 Cal.L.Rev. 40, 53, quoted with approval in *Grimes* v. *Carter, supra*, 241 Cal.App.2d 694, 699-700; and *Perati* v. *Atkinson, supra*, 213 Cal.App.2d 472, 474.)

Nevertheless when the defendants intended the consequences, and they in fact result, as is alleged in this case, should the court substitute its judgment as to what is outrageous in order to relieve the defendants of responsibility for their intended acts? Comment *h* to section 46 provides as follows: "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently

extreme and outrageous to result in liability." (Rest.2d Torts, at p. 77.) The second section of this sentence was approved and applied in *Alcorn* v. *Anbro Engineering, Inc., supra.* There the court concluded, "The multitude of cases upholding on various theories complaints alleging similar circumstances strongly indicates at least that plaintiff has pleaded a situation in which reasonable men may differ regarding defendants' liability. That being so, the order of dismissal should be reversed as to plaintiff's first cause of action." (2 Cal.3d at p. 499, fn. omitted.)

Here there is no plethora of cases dealing with facts identical with those alleged by the plaintiffs. It may be noted, however, that in this state there always have been restrictions upon the service at night of criminal process for the prosecution of a misdemeanor.[9] Although such a restriction may have been rejected at common law (see *Mackalley's Case* (1611) 9 Coke 65(b), 77 Eng. Rep. 828), and is not found in a recommended code of criminal procedure (A.L.I. Code of Crim. Proc. (1930) § 23), it may be found in many jurisdictions. (See 4 Wharton's Criminal Law & Procedure (Anderson's ed. 1957) § 1615, p. 278; A.L.I. Code of Crim. Proc., *supra,* commentary to § 23, pp. 242-244; 6 C.J.S., Arrest, § 12, subd. a, p. 609; and 5 Am.Jur.2d, Arrest, § 79, p. 765.)[10] ▮ In a society with this

[9]Penal Code section 840 now provides in part, ". . . An arrest for the commission of a misdemeanor or an infraction cannot be made between the hours of 10 o'clock p.m. of any day and 7 o'clock a.m. of the succeeding day, unless:

"(1) The arrest is made without a warrant pursuant to Section 836 or 837.

"(2) The arrest is made in a public place.

"(3) The arrest is made when the person is in custody pursuant to another lawful arrest.

"(4) The arrest is made pursuant to a warrant which, for good cause shown, directs that it may be served at any time of the day or night."

Prior to its amendment in 1969 (Stats. 1969, ch. 528, § 1, p. 1143) the statute read, ". . . If it (the offense charged) is a misdemeanor, the arrest cannot be made at night, unless upon the direction of the magistrate, indorsed upon the warrant, except when the offense is committed in the presence of the arresting officer." (Stats. 1905, ch. 530, § 1, p. 693.)

Prior to 1905, the section, as adopted with the Penal Code in 1872, did not contain the last exception (Pen. Code, 1872.) Earlier statutes similarly forbid arrest under a warrant for a misdemeanor unless expressly directed by the magistrate. (Stats. 1851, ch. 29, § 127, p. 226, and Stats. 1850, ch. 119, § 128, p. 284.)

[10]Restrictions on the time of making an arrest are generally imposed on the theory that an arrest at night or on a Sunday is oppressive and unjustifiable because of the difficulty of obtaining bail at such a time. (See 4 Wharton's Criminal Law & Procedure (Anderson's ed. 1957) § 1615, pp. 278-279, fn. 2 and accompanying text.) Nevertheless despite reforms which have prescribed the manner in which bail shall be fixed and which have enlarged the scope of officials entitled to receive bail (see Pen. Code, § 1269.6), the restrictions have been retained. Some weight therefore must be given to other arguments although they were rejected in *Mackalley's Case* (1611) 9 Coke 65(b), 77 Eng. Rep. 828, to wit: ". . . the night is a time of rest and repose, and not to arrest any by his body, for thereof would ensue . . . bloodshed; for the officer and minister of justice cannot have such assistance, nor can the peace be so well kept in the night, that is to say . . . as in the day . . .: and the prisoner cannot

heritage there may be reasonable men who consider it outrageous to serve civil process by pounding on the door of a darkened home at midnight in a loud and boisterous manner which awakens the occupants and the neighborhood, all with the express intent of inflicting extreme mental suffering and duress upon the occupants, and without any attempt to serve, or any reason to believe that process could not be served, on the plaintiff husband at a reasonable time in a reasonable manner. Therefore the court erred in sustaining the demurrers to the amended complaints.

The foregoing conclusion is buttressed by the liability imposed for interference with the privacy or peaceful occupancy of premises. ■ It is established that damages may be recovered for emotional distress occasioned by invasion of the victim's right of privacy when there is an unauthorized invasion of the victim's premises. (See Hofstader & Horowitz, The Right of Privacy (1964) § 9.1, pp. 95-97; Prosser, *op. cit.* p. 56, fns. 78 and 80; *Acadia, California, Ltd.* v. *Herbert* (1960) 54 Cal.2d 328, 337-338 [5 Cal.Rptr. 686, 353 P.2d 294]; *Razzo* v. *Varni* (1889) 81 Cal. 289, 294 [22 P. 848]; *Loughan* v. *Harger-Haldeman* (1960) 184 Cal. App.2d 495, 497 [7 Cal.Rptr. 581]; *Richardson* v. *Pridmore, supra,* 97 Cal.App.2d 124, 130; and *Emden* v. *Vitz, supra,* 88 Cal.App.2d 313, 316.) ■ It is recognized that there is an implied invitation for business licensees and others to enter upon that portion of the premises approaching and adjacent to the entrance of a residence, and that under ordinary circumstances one using that portion of the premises to approach and serve legal process could in no sense be deemed a trespasser. It is questionable, however, whether the license so implied should extend to one bent on vexing, harassing and irritating the occupants and creating a disturbance of the peace so as to inflict mental duress and suffering upon them. By the same token, it may be contended that any privilege conferred by the process, with which the actor was armed, would be forfeited because of the motivation and intent of the actor.

■ It is also *required that the emotional distress be severe.* Each plaintiff alleges: "As a proximate result of the intentional, outrageous and unreasonable conduct of the defendants and each of them, plaintiff became frightened, upset, nervous and humiliated, and suffered extreme and severe mental suffering and duress, and has been damaged thereby in the sum of $6,000.00." It is urged that the acts of which complaint is

know the officer or minister of justice in the night; nor can the prisoner so soon find sureties for his appearance in the night, and thereby avoid his imprisonment, as he may in the day: and they cited 11 H. 7.5 a that the lord shall not distrain for his rent or services in the . . . night." (9 Coke at p. 65(b), 77 Eng. Rep. at pp. 829-830.)

made could not have foreseeably caused such damage. The plaintiffs are not relying upon reckless conduct, i.e., where the actor "knows that such distress is certain, or substantially certain, to result from his conduct," but an actual intent to inflict such distress. (See Rest.2d Torts, § 46, com. *i.*, at p. 77; and fn. 7 above.) "Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." (*Id.* comment *j.*, at p. 77.) "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." (*Id.* at p. 78, quoted with approval in *Fletcher* v. *Western National Life Ins. Co., supra,* 10 Cal.App.3d 376, 397.) ██ This question cannot be resolved at the pleading stage. Although there is no allegation that the plaintiffs were particularly susceptible to emotional distress, the alleged tortfeasor, particularly when as here he intends injury, must take his victim as he finds him. (See *Acadia, California Ltd.* v. *Herbert, supra,* 54 Cal.2d 328, 338; and *Guillory* v. *Godfrey, supra,* 134 Cal.App.2d 628, 632-633.)

██ The question of causation, assuming severe emotional distress is established, is one to be determined on the evidence. ██ "Proximate cause is legal cause, as distinguished from the layman's notion of actual cause, and is always, in the first instance, a question of law. [Citations.] It becomes a question of fact when conflicting inferences or conclusions can be drawn from the evidence within the area of proximate cause as legally defined." (*Tate* v. *Canonica, supra,* 180 Cal.App.2d 898, 901. See also, *Richardson* v. *Pridmore, supra,* 97 Cal.App.2d 124, 130-131; and cf. *Spackman* v. *Good, supra,* 245 Cal.App.2d 518, 531-533.)

It is concluded that each plaintiff has alleged a cause of action to recover for the intentional infliction of emotional distress.

The judgment of dismissal of the first cause of action in number 28210 (Monterey No. 66839) is affirmed. The judgment of dismissal of the second cause of action in number 28210 (Monterey No. 66839), and the judgment of dismissal of the complaint in action number 28175 (Monterey No. 67360) are both reversed, and the trial court is instructed to overrule the demurrers to each of those causes of action and allow defendants to answer, and to dispose of plaintiffs' motion for consolidation. Appellant to recover costs on appeal in each case.

Molinari, P. J., and Elkington, J., concurred.