Filed 12/17/24  Jue v. Jue CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JEFFREY M. JUE,<br><br>     Cross-complainant and Respondent,<br><br>v.<br><br>CLIFFORD T. JUE, as Trustee, etc.,<br><br>     Cross-defendant and Appellant. | A167601<br><br>(Alameda County<br>Super. Ct. No. 22CV009541) |

Cross-defendant Clifford T. Jue (Clifford) and cross-complainant, Jeffrey M. Jue (Jeffrey), are brothers who have been embroiled in litigation involving their late mother Lillie Jue's estate since 2014.[1]  Lillie Jue and her husband, Jun Jue, amassed a large portfolio of San Francisco Bay Area real estate that was held in a family trust, the Jue 1995 Trust, of which the couple were cosettlors.  Jun Jue passed away in 2000, followed by Lillie Jue in 2021.  At that time, Clifford became trustee of the Lillie T. Jue Living Trust and the

---

[1] We refer to the parties using their first names for ease of reference, intending no disrespect.

1

Jue 1995 Trust, as well as the subtrusts created thereunder[2] (collectively, Trusts).

Clifford brought the present lawsuit in his capacity as trustee of the Trusts to enforce his right to, among other things, net operating income in proportion to his ownership interest in one of the trust assets, an apartment building located at 740 Oakland Avenue in the City of Oakland (740 Oakland). After being sued, Jeffrey filed a cross-complaint asserting causes of action against Clifford that included breach of contract, declaratory relief, and abuse of process.

At hand is Clifford's appeal from the trial court's order denying his special motion to strike the abuse of process cause of action in Jeffrey's cross-complaint pursuant to the anti-SLAPP statute (Code Civ. Proc., § 425.16).[3] According to Clifford, the trial court erred in finding Jeffrey met his burden under Code of Civil Procedure section 425.16 of demonstrating a probability of success on the merits. Clifford asserts that Jeffrey cannot make a prima facie factual showing of abuse of process and the litigation privilege under Civil Code section 47, subdivision (b) is a complete defense to the claim.[4] We agree with Clifford that Jeffrey has not met his burden of proof under the second prong of the anti-SLAPP statute. Accordingly, we reverse the trial court's order denying Clifford's anti-SLAPP motion and remand with

---

[2] On the death of Jun Jue, the Jue 1995 Trust was divided into three subtrusts referred to as the survivor's trust, the exemption trust, and the marital trust.

[3] Unless otherwise stated, all statutory citations herein are to the Code of Civil Procedure.

[4] There is no dispute that Jeffrey's abuse of process claim arises from protected activity under section 425.16.

instructions to grant the motion and dismiss the abuse of process claim in Jeffrey's cross-complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2014, Lillie Jue commenced a lawsuit against Jeffrey for financial elder abuse based on his conduct in inducing Lillie to transfer to him her ownership interests in certain real property, including her ownership interest in 740 Oakland.[5]  The matter eventually settled, and on May 10, 2019, an order on stipulation and findings was entered by the court (hereinafter, 2019 settlement agreement).  Among other terms, the 2019 settlement agreement provided that the transfer of Lillie's 50-percent ownership interest in 740 Oakland to Jeffrey was set aside and rescinded.  In addition, Jeffrey was granted, upon Lillie's death, an option to purchase her interest in 740 Oakland "for a purchase price equal to 90% of 105% of the appraised value of Oakland Ave. determined by a report issued by an MAI appraiser mutually agreed to by the then owners of Oakland Ave."

On March 3, 2020, Lillie filed a motion to enforce the 2019 settlement agreement that was joined by Clifford, Jennifer Jue, and Terrence Jue, all of whom were beneficiaries of the Trusts.  Jeffrey opposed this motion.  After a contested hearing, the court entered an order and judgment on July 23, 2020, partially granting Lillie's motion (July 23, 2020 judgment).  Under the July 23, 2020 judgment, the transfer of Lillie's 50-percent interest in 740 Oakland to Jeffrey on November 12, 2012, was "rescinded and set aside ab initio."  Jeffrey was permitted to retain a separate 10-percent interest in 740 Oakland (among other property interests) upon his payment to the

---

[5] According to the complaint, after her husband's death, Lillie owned a 50-percent interest in 740 Oakland in her survivor's trust and a 50-percent interest in 740 Oakland in the Jue QTIP Marital Trust.  After Lillie died, Clifford became the trustee of both trusts.

Jue QTIP Marital Trust of an amount constituting "good and sufficient consideration for the sale . . . ."

## I.    *The Complaint.*

After Lillie's death, Clifford continued Lillie's efforts to enforce the 2019 settlement agreement, as well as a property management agreement she entered into with defendants Cedar Properties Real Estate Group (Cedar Properties) and Jonathan Weldon.  To this end, on April 7, 2022, Clifford, in his capacity as trustee of the Trusts, filed a complaint against Jeffrey, Cedar Properties and Weldon (collectively, defendants) for breach of contract, breach of the covenant of good faith and fair dealing, interference with contract and declaratory relief.

According to the complaint, Lillie entered into the written property management agreement with Cedar Properties and Weldon (referred to as "the broker") in 2016, which, among other things, required them to disburse to Lillie the net operating income from 740 Oakland that was being held in the broker's trust account (NOI).  The NOI consisted of the balance of rental payments collected from the tenants of 740 Oakland less compensation payable to the broker and other operating expenses and costs.

The complaint further alleged Lillie made repeated efforts, before and after moving to enforce the 2019 settlement agreement, to obtain defendants' compliance with the requirement in the property management agreement that she receive 90 percent of the NOI based on her ownership interest in 740 Oakland.[6]  Initially, Cedar Properties and Weldon told Lillie that the NOI distributable to her was being held in the broker's trust account pending

---

[6] With respect to Lillie's 90-percent ownership interest in 740 Oakland, 50 percent is held by the survivor's trust and 40 percent is held by the Jue QTIP Marital Trust.

4

final determination of the ownership interests in 740 Oakland. Lillie then advised defendants that under the July 23, 2020 judgment, her transfer to Jeffrey of a 50-percent interest in 740 Oakland was rescinded. However, even with this information, defendants refused to comply with her demand for disbursement of the NOI, allegedly based on Jeffrey's misrepresentation that the parties were still in settlement discussions regarding their respective interests in the property.

## II.     *The Cross-complaint*

On December 2, 2022, Jeffrey filed a cross-complaint against Clifford asserting causes of action for abuse of process, breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, and specific performance.

According to this cross-complaint, Clifford breached the 2019 settlement agreement by, among other things, interfering with Jeffrey's right to purchase Clifford's 90-percent interest in 740 Oakland by failing to obtain the requisite appraisal of the property within 90 days of Lillie's death.

With respect to the abuse of process claim, the cross-complaint alleged that, when this action was filed in April 2022, Jeffrey was out of the country. While Jeffrey was abroad, Clifford allegedly made "three desultory attempts" to personally serve him at his residence before "embark[ing] on an improper campaign to gain advantage in the parties' various disputes" by "deliberately harassing Jeff's lawyers and tenants" under the "guise of effecting 'Substituted Service' on Jeff."

## III.     *The Anti-SLAPP Motion.*

On January 27, 2023, Clifford filed a motion under the anti-SLAPP statute to strike the abuse of process claim in Jeffrey's cross-complaint. Clifford argued that Jeffrey's claim arises from protected speech or conduct

5

under the anti-SLAPP statute and lacks minimal merit because the act of service of process is protected as a matter of law by the litigation privilege under Civil Code section 47, subdivision (b).

In opposition to this motion, Jeffrey argued his abuse of process claim is not subject to the anti-SLAPP statute because it is based on noncommunicative conduct that falls outside the scope of the litigation privilege.

## IV.  *The Court's Order and Notice of Appeal.*

On March 23, 2023, the trial court issued an order denying Clifford's anti-SLAPP motion.  The court found for purposes of the anti-SLAPP statute's first prong that the alleged acts underlying Jeffrey's abuse of process claim are conduct in furtherance of the constitutional right of petition, which is protected activity under section 425.16.  The burden thus shifted to Jeffrey to prove for purposes of the statute's second prong that the claim had at least minimal merit.  The court then found Jeffrey met this burden by providing evidence that his abuse of process claim falls outside the litigation privilege because it is not based on acts that were "essentially communicative.  *See Booker v. Rountree*, 155 Cal.App.4th 1366, 1372–1373 (2007)."

Clifford timely appealed the court's order.

## DISCUSSION

California's anti-SLAPP statute authorizes a defendant to move to strike claims arising from any act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue . . . ."  (§ 425.16, subd. (b)(1).) The purpose of this statute is to "encourage participation in matters of public significance by allowing defendants to request 'early judicial screening' of

6

claims targeting free speech or petitioning activities. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880 [citations]; see § 425.16, subd. (a).)" (*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 311 (*Wittenberg*).)

"Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16, and if the defendant makes this showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. [Citation.] On appeal, we review the trial court's ruling on the anti-SLAPP motion de novo." (*Wittenberg, supra*, 50 Cal.App.5th at pp. 311–312.)

We are concerned only with the second step, to wit, whether Jeffrey met his burden of establishing a probability of success on the merits, as it is undisputed service of a summons and complaint is an act in furtherance of the right of petition. To meet this burden, Jeffrey must "demonstrate that the [cross-]complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the [cross-complainant] is credited." (*Matson v. Dvorak* (1995) 40 Cal.App.4th 539, 548.) "This step of the anti-SLAPP analysis 'has been described as a summary-judgment-like procedure. [Citation.] The court determines whether " 'the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment.' " [Citation.] The plaintiff " 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.' " [Citation.] The defendant may submit evidence in support of its motion. [Citation.] However, " '[t]he court does not weigh evidence or resolve conflicting factual claims.' " [Citation.] Rather, the court " 'accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to

determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed." ' " ' [Citation.] Conversely, '[i]f the plaintiff cannot make this showing, the court will strike the claim.' (*Bonni* [*v. St. Joseph Health System* (2021) 11 Cal.5th 995,] 1009.)" (*Bui v. Ngo* (2024) 101 Cal.App.5th 1061, 1071.)

To make a prima facie showing sufficient to prevail on an abuse of process claim, a plaintiff must prove "the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*).) In addition, the plaintiff must prove that he or she suffered some harm as a result of the defendant's misuse of the process. (*Yee v. Superior Court* (2019) 31 Cal.App.5th 26, 37, citing Rest.2d Torts, § 682; CACI No. 1520.)

" '[T]he essence of the tort [of abuse of process is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.' " (*Rusheen, supra*, 37 Cal.4th at p. 1057.) Evidence of misuse of this power is "essential as ' "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' (*Spellens v. Spellens* (1957) 49 Cal.2d 210, 232 [citation].)" (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832, 842.)

Here, Jeffrey relies on the following facts to prove his abuse of process claim has at least minimal merit: (1) Clifford engaged in various strategies in 2021 and 2022 to pressure Jeffrey to agree to an "unfair" distribution of NOI and to frustrate his efforts to purchase Clifford's interest in 740 Oakland; (2) Clifford "strategically elected" to file this lawsuit rather than commence a JAMS arbitration, which would have allowed Clifford to serve Jeffrey by

8

overnight delivery service or U.S. mail; (3) Clifford sent a process server to Jeffrey's residence on three occasions between April 23 and 26, 2022, despite knowing there was a " 'high probability' " Jeffrey would be abroad and unable to accept personal service; (4) using "the 'failed' personal service on Jeff as purported justification," Clifford then sent process servers to the offices of his attorneys at least 10 times over a 20-day period, even after his attorneys advised Clifford they were not authorized to accept service on Jeffrey's behalf; and (5) while Clifford made no attempt to personally serve Jeffrey between May 15 and July 15, 2022, when Jeffrey was in town, he later engaged a private investigator who knocked on the doors of at least nine of Jeffrey's tenants to " 'interrogate' " them as to Jeffrey's whereabouts and attempted to " 'serve' " one such tenant with a summons and complaint.

For reasons that follow, we conclude these facts, individually and collectively, fail to establish the requisite prima facie showing that Clifford harbored an ulterior motive in using the legal process or committed a willful act in the use of this process that was not proper in the regular conduct of the proceedings. (*Rusheen, supra*, 37 Cal.4th at p. 1057.)

Most fundamentally, we find no evidence tending to show Clifford used the legal process in this case for anything other than its proper purpose. Jeffrey's complaint that Clifford used different strategies before filing this lawsuit to pressure him to agree to an "unfair" distribution of NOI and frustrate his efforts to purchase Clifford's interest in 740 Oakland merely prove the point. Clifford resorted to legal action in order to try to accomplish what he had been unable to accomplish informally—to enforce the terms of the 2019 settlement agreement governing their respective interests in 740 Oakland. "[W]hile a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for

9

malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 (*Oren Royal Oaks*); accord, *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 886 (*Cantu*) [" 'there is no abuse of process' " if the process " 'is used for its proper purpose even though the person uses it for wrongful and malicious motives' "].)

Jeffrey's claim that Clifford "strategically elected" to file this lawsuit rather than commence a JAMS arbitration fails to make a prima facie showing of abuse of process for the same reason. Clifford's decision to pursue litigation before arbitration is not a misuse of the power of the court; rather, it is an appropriate use of the court to resolve an ongoing dispute over property rights. As stated *ante*, "[m]erely obtaining or seeking process is not enough . . . . The gist of the tort is the improper use of the process *after it is issued*." (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 530–531; accord, *Oren Royal Oaks, supra*, 42 Cal.3d at p. 1170 ["since the gist of Oren's complaint was simply that defendants improperly instituted the . . . action in the first place, . . . the complaint did not state a cause of action for abuse of process"].)

Jeffrey also points to evidence that Clifford "embarked on a course of conduct of repeatedly harassing Jeff's attorneys and tenants under the pretext of attempting 'substitute service' on Jeff." Jeffrey attests in a declaration that, "[i]t is my belief that going after my lawyers and my tenants under the guise of attempting to effect service of process, Clifford was demonstrating how he could misuse the litigation process to disrupt [his] important relationships," as well as to pressure him to settle their dispute

10

over the NOI and to drop his efforts to purchase Clifford's interest in 740 Oakland.

Jeffrey's declaration makes clear that he is challenging the propriety of Clifford's method of service, which is not a proper basis for an abuse of process action. (*Slaughter v. Legal Process & Courier Service* (1984) 162 Cal.App.3d 1236, 1248 [abuse of process claim fails as a matter of law when "appellant is challenging the propriety of the method of service, and not the reasons for which he was being served," and no evidence established the legal process was used to obtain a collateral advantage]; *Golden v. Dungan* (1971) 20 Cal.App.3d 295, 300 (*Golden*) [actionable abuse of process cannot be based on a party's manner of service of process because the tort requires the misuse of process for "any purpose other than that which it was designed to accomplish"].)

*Golden* is instructive. There, the defendants sent a process server to the plaintiff's home at midnight to attempt service for the first time. Although the house was completely dark and there was no reason to believe process could not be served at a reasonable time of day, the process server pounded loudly on the front door (instead of using the doorbell), awakening plaintiff, his family, and the neighborhood. (*Golden, supra,* 20 Cal.App.3d at pp. 298–299.) While this attempt at service was unsuccessful, the plaintiff was eventually served with a summons and complaint. The plaintiff then brought a claim for abuse of process against the defendants, alleging "the summons [was] used 'to accomplish a purpose for which it is not designed' because the defendants 'knowingly, maliciously and with intent to vex, harrass [*sic*], irritate and more specifically with the intention of inflicting mental suffering and duress upon the plaintiff and the plaintiff's family'

11

caused the process to be served on the plaintiff in the manner of which he complains." (*Id*. at p. 301.)

The *Golden* court held the defendants' method of service of process was not actionable, even if maliciously motivated: "Analysis of the allegations of the first cause of action in his second amended complaint indicates that it is the manner of service, not the fact of service itself which is the gravamen of plaintiff's alleged cause of action. [¶] An analysis of the precedents . . . reveals that generally it is only where process is used to obtain a collateral advantage that an action will lie, e.g., seizure of a second lender's collateral in the hands of a debtor in order to coerce the former to pay the debtor's original obligation (*Templeton Feed & Grain Co. v. Ralston Purina Co.* [(1968)] 69 Cal.2d 461, 466); attaching property which has a value greatly in excess of the amount of a legitimate claim in order to restrain the debtor from asserting a cross-claim (*White Lighting Co. v. Wolfson* [(1968)] 68 Cal.2d 336, 347); seizure of property of a wife to coerce her into dropping claims against her husband (*Spellens v. Spellens, supra*, 49 Cal.2d 210, 230); garnishing exempt wages in order to force a debtor to apply his exempt property to the payment of the debt (*Czap v. Credit Bureau of Santa Clara Valley* [(1970)] 7 Cal.App.3d 1, 5–6); and procuring a judgment in unlawful detainer for the purpose of evicting the tenants solely for the purpose of occupancy by the landlord (as provided by government regulation and certificate) with the intent of letting the premises as prohibited by law (*Tranchina v. Arcinas* [(1947)] 78 Cal.App.2d 522, 526). [¶] The defendants' satisfaction in the successful accomplishment of their intended vexation, harassment and irritation of plaintiff and his family by the service of process is not the type of collateral advantage which is generally recognized as a purpose for which the process is not designed." (*Golden, supra*, 20 Cal.App.3d at pp. 301–302.)

Following *Golden*, we conclude Jeffrey's abuse of process claim cannot be premised on the manner of service employed by Clifford and his representatives, regardless of how unreasonable or malicious, absent evidence that Clifford used the process to obtain a collateral advantage. (Accord, *Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 876 [" 'Some definite act or threat beyond the scope of the process is required . . . . [M]ere vexation or harassment are not recognized as objectives sufficient to give rise to the tort [of abuse of process]' "]; *Maleti v. Wickers* (2022) 82 Cal.App.5th 181, 231 ["Abuse of process claims include lawsuits involving improper uses of the *tools* afforded litigants, such as the improper use of discovery [citation]; service of wrongful attachments [citation]; obtaining a temporary restraining order to perpetuate a false representation concerning a party [citation]; [and] knowingly filing debt collection actions in improper venues for the purpose of impairing the debtors' ability to defend themselves"].) Here, there is no such evidence.

We acknowledge Jeffrey's allegation that Clifford's purpose in attempting to effectuate substitute service on Jeffrey's attorneys and tenant and in interrogating his tenants as to his whereabouts was to "disrupt these important relationships . . . ." Even assuming this allegation identifies a collateral advantage Clifford sought to obtain through his use of the legal process, it does not help Jeffrey meet his burden under section 425.16 for two reasons.

First, Jeffrey offers no evidence of any actual disruption in his attorney or tenant relationships caused by Clifford's actions. To prevail on a claim of abuse of process, there must be proof that the plaintiff or cross-complainant suffered harm as a result of the defendant's misuse of process. (*Yee v. Superior Court, supra*, 31 Cal.App.5th at p. 37.)

13

Second, our examination of Jeffrey's cross-complaint confirms the gravamen of his abuse of process claim is the communicative acts taken by Clifford's process servers in their attempts to serve the summons and complaint. Such communicative acts, made in the course of the litigative process, are protected by the litigation privilege under Civil Code section 47, subdivision (b) and cannot provide the basis of an abuse of process claim. (*Rusheen, supra*, 37 Cal.4th at p. 1062; *Cantu, supra*, 4 Cal.App.4th at p. 886 ["Statements made in the course of litigation are subject to the [litigation] privilege . . . and cannot provide the basis for an abuse of process action"].) Specifically, the process servers' repeated attempts to serve process on Jeffrey's attorneys, even after being informed the attorneys were not authorized to accept service on Jeffrey's behalf, and interrogating Jeffrey's tenants to learn his whereabouts in order to effectuate service are communications " '(1) made in judicial . . . proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action' . . . ." (*Rusheen, supra*, 37 Cal.4th at p. 1062; see Civ. Code, § 47, subd. (b).) Accordingly, the litigation privilege applies and protects Clifford against torts arising from these acts, regardless of whether they were intended to harass, threaten, coerce or otherwise harm Jeffrey. (See *Rusheen, supra*, at p. 1052 [litigation privilege barred abuse of process claim based on the filing of false declarations of service later used to obtain a default judgment]; *Asia Investment Co. v. Borowski, supra*, 133 Cal.App.3d at pp. 842–843 [litigation privilege barred abuse of process claim based on threatening statements made during a conversation between counsel that was "essentially a settlement proposal"].)

14

Jeffrey relies on *Booker v. Rountree* (2007) 155 Cal.App.4th 1366 to argue the acts underlying his claim are noncommunicative and, thus, outside the scope of the litigation privilege. The trial court accepted this argument, finding: "The claim is based on conduct of (1) not attempting diligent service; (2) 10 attempts to serve through counsel while counsel stated they were not authorized to accept service; and (3) questioning, harassing and attempting service through Jeffrey's tenants. The contents of any communications by Clifford or his agents do not matter."

*Rusheen* defeats this position. *Rusheen* held the litigation privilege protected the communicative act of filing a declaration of service, which was the gravamen of the abuse of process claim in that case. (*Rusheen, supra*, 37 Cal.4th at p. 1061.) Likewise, here, the litigation privilege protects the communicative acts of attempting service of process, which is the gravamen of Jeffrey's abuse of process claim, as well as the ancillary communicative acts of questioning and harassing tenants and attorneys in an effort to effectuate service of process. Even if it could be said Clifford's process servers' attempts at service of process involved some noncommunicative physical act (no such physical act is alleged here), "the relevant question [is] whether the *gravamen* of the action was communicative or noncommunicative conduct." (*Ibid*.) When, as here, "the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . ." (*Id*. at p. 1065.)

Accordingly, for the reasons stated, we conclude the facts presented by Jeffrey in opposition to the anti-SLAPP motion do not establish a reasonable probability that Jeffrey will prevail on his abuse of process claim because (1) there is no evidence, direct or circumstantial, that Clifford used the court's

15

process for any purpose other than that for which the process was designed and (2) the litigation privilege under Civil Code section 47, subdivision (b) precludes Jeffrey from relying on any communicative act of Clifford's process servers to establish an abuse of process. (*Rusheen, supra*, 37 Cal.4th at p. 1056.) The trial court thus erred in denying Clifford's anti-SLAPP motion.[7]

## DISPOSITION

The order denying the anti-SLAPP motion is reversed.[8] The matter is remanded to the trial court to grant the anti-SLAPP motion and dismiss the abuse of process cause of action in the cross-complaint.


Jackson, P. J.


WE CONCUR:

Simons, J.
Burns, J.


A167601/*Jue v. Jue*

---

[7] Jeffrey argues we should affirm the trial court's order on the ground that Clifford's anti-SLAPP motion was untimely even though the trial court did not rely on this ground. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85 [reviewing court not bound by the reasons for the lower court's ruling since it reviews the ruling itself and not its rationale].) Yet, in making this argument, Jeffrey fails to acknowledge the trial court expressly exercised its discretion under section 425.16, subdivision (f) to hear the untimely motion, and he makes no attempt to demonstrate the trial court's exercise of discretion was outside the bounds of reason. Under these circumstances, we deem his argument to be abandoned. (*Symmonds v. Mahoney* (2019) 31 Cal.App.5th 1096, 1104–1105.)

[8] Since we have reversed the denial of Clifford's anti-SLAPP motion, we need not consider or rule on Clifford's request for judicial notice of information reflected in certain court documents that were not introduced below.

16